Philip D. THOMPSON,
Plaintiff-Appellant,

v.

TUALATIN HILLS PARK AND RECREATION DISTRICT,
Defendant-Appellee.

No. 80–3375.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1982.

Decided March 9, 1983.

George M. Galloway, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., for plaintiff-appellant.

Rodney C. Adams, David Denecke, Beaverton, Or., for defendant-appellee.

Before BROWNING, Chief Judge, WALLACE and BOOCHEVER, Circuit Judges.

PER CURIAM:

Both parties accept the district court's findings of fact. *See* 496 F.Supp. 530 (D.Or.1980). Briefly, plaintiff owned vacant land suitable for development within the defendant Tualatin Hills Park and Recreation District. Plaintiff also held an option to purchase adjacent land which would improve access to plaintiff's land and permit subdivision into a larger number of building lots. The District was not aware of plaintiff's development plan or of his option to purchase the adjacent property. In May 1976 defendant District filed a condemnation action in Oregon Circuit Court to acquire plaintiff's land for use as a public park. Plaintiff permitted the option on the adjacent land to run out. In June 1977 the District abandoned the condemnation action, having concluded that the projected park would be too costly and difficult to develop. Pursuant to Oregon law, plaintiff recovered costs and expenses incurred in the condemnation proceeding including expert witness and attorney fees. Or.Rev. Stat. § 35.335 (1981).

Plaintiff filed this action in federal court to recover damages for an alleged taking of his property without just compensation in violation of the United States and Oregon Constitutions.[1] Plaintiff claimed the filing of the condemnation action prevented him from developing his property and caused him to forgo the option to purchase the adjacent land, permanently reducing the market value of his property. Plaintiff sought compensation equal to the difference in value between his land with the adjacent land and without it. The district court held there had been no taking. We agree.

The result in this case is controlled by the rationale developed in footnotes in *Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). In that case the city initiated proceedings to condemn Agins' property but abandoned them after a year, reimbursing Agins for costs incurred in connection with the action. *Id.* at 257–58 n. 1, 100 S.Ct. at 2139–40 n. 1. Agins argued the institution and abandonment of eminent domain proceedings themselves constituted a taking, just as plaintiff argues in this case. The Supreme Court of California rejected the argument. The court "found that the city had acted reasonably and that general municipal planning decisions do not violate the Fifth Amendment." *Id.* at 259 n. 5, 100 S.Ct. at 2141 n. 5. The California Supreme Court distinguished its earlier decision in *Klopping v. City of Whittier,* 8 Cal.3d 39, 500 P.2d 1345, 104 Cal. Rptr. 1 (1972), on the grounds that *Klopping* involved unreasonable delay in instituting eminent domain proceedings and other unreasonable conduct prior to condemnation. *Agins v. City of Tiburon,* 24 Cal.3d 266, 278, 598 P.2d 25, 31, 157 Cal. Rptr. 372, 378 (1979).

The Supreme Court of the United States agreed:

The State Supreme Court correctly rejected the contention that the municipality's good-faith planning activities, which did not result in successful prosecution of an eminent domain claim, so burdened

---

1. We do not analyze separately plaintiff's pendent state claim under article I, § 18 of the Oregon Constitution, since the Oregon Supreme Court has held that section to be "identical in language and meaning with the Fifth Amendment of the Constitution of the United States, as applied to the states by the Fourteenth Amendment." *Lincoln Loan Co. v. State Highway Comm'n,* 274 Or. 49, 52 n. 2; 545 P.2d 105, 106 n. 2 (1976). *See Delaware v. Prouse,* 440 U.S. 648, 652, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979).

the appellants' enjoyment of their property as to constitute a taking. Even if the appellants' ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings ended. Mere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are "incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense."

447 U.S. at 263 n. 9, 100 S.Ct. at 2143 n. 9 (citations omitted).

In the present case, as in *Agins,* the condemnation proceeding was pending only for approximately a year, and there is no charge of lack of diligence, bad faith, or other unreasonable or oppressive activity in initiating or abandoning the proceeding.

Plaintiff seeks to distinguish *Agins* on the ground that in this case the abandoned condemnation action caused a permanent loss of value rather than a mere fluctuation of value during the pendency of the proceeding. The rule suggested by *Agins* is not limited to situations in which an abandoned condemnation action has no net effect on the value of the subject property.

 The determination of cost in a condemnation proceeding is an integral stage in the process of planning public projects. General condemnation statutes of both the United States, 40 U.S.C. § 257, and Oregon, Or.Rev.Stat. §§ 35.325–.335, permit the condemning authority to determine how much the property will cost, and hence the feasibility of the public project, before the authority is committed to acquire it. *Danforth v. United States,* 308 U.S. 271, 284–85, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939); *City of Silverton v. Porter,* 28 Or.App. 415, 419, 559 P.2d 1297, 1300 (1977). As a general rule the taking does not occur, and the governmental authority is therefore not committed, until the amount that will be required for just compensation has been determined and paid. *Danforth v. United States,* 308 U.S. at 284–85, 60 S.Ct. at 236;

*United States v. 156.81 Acres of Land,* 671 F.2d 336, 340 (9th Cir.1982).

If plaintiff were correct, condemnation proceedings could not be initiated to determine the value of the property and hence the feasibility of a project. Initiation of a condemnation proceeding without more would expose the condemning authority to potentially substantial and entirely unforeseeable liability that could be avoided only by government inaction. The cases upon which plaintiff relies involved long delayed or protracted acquisition proceedings and other governmental activity resulting in direct and substantial interference with plaintiff's use and enjoyment of his property and significant and foreseeable impairment of its market value. *See Richmond Elks Hall Association v. Richmond Redevelopment Agency,* 561 F.2d 1327 (9th Cir.1977); *Foster v. City of Detroit,* 254 F.Supp. 655 (E.D. Mich.1966), *aff'd.* 405 F.2d 138 (6th Cir. 1968).

Plaintiff lost only the prospective enhancement of market value which exercising his option on the adjoining land would have brought. Even without the adjoining land, plaintiff was able to sell his property at a substantial profit.[2] Moreover, defendant did not directly interfere with plaintiff's right to exercise his option on the adjoining land. Pendency of the condemnation proceeding made exercise of plaintiff's option on the adjoining property a more risky business venture, but such short-term uncertainty as to the outcome of government decisionmaking is an "incident[ ] of ownership. . . . [and] cannot be considered as a 'taking' in the constitutional sense." *Agins v. City of Tiburon,* 447 U.S. at 263 n. 9, 100 S.Ct. at 2143 n. 9, *quoting Danforth v. United States,* 308 U.S. at 285, 60 S.Ct. at 236.

Affirmed.

**2.** Plaintiff purchased the property in April 1976 at a total cost of $31,000, and sold it in January 1978 for $85,000.