745 F.2d 1196
 Carole K. EVERS, an individual, Plaintiff-Appellant-Cross Appellee,
v.
The COUNTY OF CUSTER; Clyde Rigby, Custer County
Commissioner, et al., Defendants-Appellees-Cross
Appellants.
Thurlo H. FRENCH and Dorothy French, Counterclaimants-Appellees,
v.
Carole K. EVERS, an individual, Counterdefendant-Appellant.
 Nos. 83-3605, 83-3716 and 83-4002.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1983.
Decided Oct. 22, 1984.
 
 Steven J. Millemann, McCall, Idaho, for Carole K. Evers.
 Jon S. Gorski, R.B. Rock, Moffatt, Thomas, Barrett & Blanton, Boise, Idaho, for defendants-appellees-cross appellants.
 Robert M. Tyler, Elam, Burke, Evans, Boyd & Koontz, Boise, Idaho, for counterclaimants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before ANDERSON and FLETCHER, Circuit Judges, and EAST,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Evers appeals from a summary judgment in favor of all defendants on her claim under 42 U.S.C. Sec. 1983 (1982) and from an award of attorney's fees to defendants Dorothy and Thurlo French. Defendants Custer County and Commissioners Rigby, Maraffio, and Uresti appeal from the denial of their motion for attorney's fees.
 
 FACTS
 
 2
 Appellant Evers purchased the Robinson Bar Ranch in June of 1981. The ranch is located next to the Salmon River and is surrounded by land belonging to the United States Forest Service. The Robinson Bar Road runs through the ranch, and connects with a highway a few miles east and west of the ranch. Believing that the portion of the road crossing her land was private property, Evers locked the gate across the road on the east and west entrances to the ranch.
 
 
 3
 Many people were upset about the closing of the road. Neighbors, including the Frenches, had used it to gain access to their property. Although the neighbors could reach their property by other routes, the other roads were either more dangerous or less convenient. Members of the public had also used the road to reach areas of the surrounding national forest used for recreational purposes. Two years earlier, when the previous owners had put up the gates, hundreds of people had signed a petition asking the county to have the gates removed.
 
 
 4
 Throughout the summer many persons, including the Frenches, complained to the Commissioners about the closing of the road, although Evers had given the Frenches the combinations to the locks and permission to use it. The Forest Service had been attempting to obtain a right-of-way across the ranch, and was active in encouraging the Commissioners to declare the road public.
 
 
 5
 In August of 1981, the local newspaper reported that the road had been discussed at a meeting of the County Commissioners. The Frenches were present at that meeting. The newspaper reported that the Commissioners said the road had already been declared public. It is not clear whether the declaration had already been made at that time, but on September 16, 1981, the Commissioners signed, and later recorded, a "Declaration of Public Road," announcing that the road was public under Idaho Code Sec. 40-103 (1977), which provides that a road that has been used by the public for five years and maintained at public expense is a public highway.[1] There is some evidence that the road had been maintained by the Forest Service for over five years and that the public had used it, although there is considerable dispute over the significance of the maintenance and whether that use was by permission of the owners of the ranch.
 
 
 6
 After the newspaper reported that the road was public, Evers had many encounters with people who insisted they had a right to use the road and were upset by the locked gate. In late August, Evers wrote to the Commissioners, asserting that the road was private property. After considering the various options available for opening the road, on October 22, 1981 the County had the sheriff serve Evers with a copy of the declaration and citation for obstructing a public highway, a misdemeanor.[2]
 
 
 7
 In November, 1981, Evers filed this suit, alleging that the County and Commissioners unconstitutionally deprived her of property without due process by issuing and recording the "Declaration of Public Road" without giving her notice and an opportunity to be heard, and by subsequently prosecuting her for obstructing a public highway. She claimed the Frenches conspired with the Commissioners to have the road declared public. She sought damages and a declaratory judgment holding the Declaration of Public Road a nullity, the Idaho statute on which it was based unconstitutional, and the road her private property. The Frenches cross-complained, alleging they had a prescriptive easement over the road in question.
 
 
 8
 The district court granted summary judgment in favor of all defendants. It held that the issuance and recording of the Declaration did not constitute a deprivation of property because it was merely a recognition of the fact that the road had become public by the operation of Idaho law. The declaration did not create or destroy any legal rights and the County, the court held, had not attempted to exercise control over the road. The court noted that there was some question as to what property right, if any, Evers had in the road. Accordingly, the court found that there was no basis for Evers's federal claims and granted the County and Commissioners' motions for summary judgment. The court also held that the County was not liable under section 1983 because the alleged violation of Evers's right to due process was not the result of an official County policy, and that the Commissioners were also immune from suit because they had not violated clearly established constitutional rights of which a reasonable person should have been aware.
 
 
 9
 The court granted the Frenches' motion for summary judgment, finding there was no evidence they had engaged in a conspiracy to deprive Evers of her constitutional rights. The Frenches' motion for attorney's fees was granted. The court dismissed the Frenches' counterclaims, along with Evers's remaining claims concerning rights to the road, because there was no longer a federal question in the case. The County defendants' post-trial motion for attorney's fees was also denied.
 
 DISCUSSION
 Due Process
 
 10
 In reviewing the grant of summary judgment in favor of defendants, we draw all permissible inferences in favor of the plaintiff. See Ruffin v. County of Los Angeles, 607 F.2d 1276, 1279 (9th Cir.1979), cert. denied, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980). Summary judgment is proper only if the facts, viewed in this light, could not, as a matter of law, support a judgment in favor of the plaintiff. 607 F.2d at 1280. Applying that standard to this case we find the district court erred in concluding that the County had not interfered with Evers's property rights and that, therefore, it had not violated her constitutional rights by issuing and recording the Declaration of Public Road without giving her notice and an opportunity to be heard.
 
 
 11
 Evers argued that the county deprived her of property by recording the Declaration, thereby clouding her title; by encouraging the public to use the road; and by subjecting her to criminal charges. The district court found, and the county defendants now argue, that the issuance of the Declaration did not deprive Evers of any property right.
 
 
 12
 1. Evers's Property Interest.
 
 
 13
 Evers's claim that she owns the road is not frivolous. The road crosses her property and the previous owners considered it private although they gave the public permission to use it. There were gates where the road entered the ranch when Evers bought it. The road was officially abandoned by the county in 1939. The effect of such abandonment under Idaho law is to vest title in the adjacent landowners. Although the district court expressed its opinion that her claim was probably not valid, the record reveals at least some legal and factual basis for her claim that the road is private. Although Evers's interest in the road is a matter of dispute, her colorable claim may give her a constitutionally protected property interest in it. The showing is sufficient to require a trial on the merits. See Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (appellants' interest in chattels protected by fourteenth amendment even though their right to continued possession was a matter of dispute); McCulloch v. Glasgow, 620 F.2d 47 (5th Cir.1980) (plaintiff entitled to due process before state built road on land to which both claimed title).
 
 
 14
 2. Deprivation of Property.
 
 
 15
 The County argues that the issuance of the Declaration was not a significant interference with Evers's interests and therefore did not require prior notice and a hearing. Under Idaho law, a road becomes public by public use and maintenance over a five-year period. Idaho Code Sec. 40-103.[3] The declaration does not determine the legal status of the road. See State v. Nesbitt, 79 Idaho 1, 310 P.2d 787 (1957) (upholding conviction for obstruction of public highway that had been acquired by the operation of section 40-103 even though it had not been recorded as public by the County Commissioners). Thus, the County argues, the Declaration was no more than a statement of the County's intent to treat the road as public. It had no legal effect on Evers's rights. The County argues that this case fits within the line of cases holding that merely designating an area for condemnation or appropriation does not amount to a taking of property. See, e.g., Thompson v. Tualatin Hills Park and Recreation District, 701 F.2d 99 (9th Cir.1983) (filing of condemnation action, later dropped, was not a taking); see also Matter of Northwest Homes of Chehalis, Inc., 526 F.2d 505 (9th Cir.1975), cert. denied, sub nom. Hansen v. Weyerhaeuser Co., 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976) (upholding Washington statute allowing attachment of defendant's property as security for judgment without prior notice and hearing because defendant not deprived of use and possession of property).
 
 
 16
 We recognize that a proper statute may operate to extinguish property rights after a specified period during which the owner has failed to exercise or assert her rights. See Texaco, Inc. v. Short, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). The statute itself gives the property owner adequate notice that her rights will be extinguished automatically unless she takes steps to protect them. 454 U.S. at 532, 102 S.Ct. at 793. Thus, in Texaco, the Supreme Court upheld an Indiana statute that provided for the lapse of mineral rights after a 20-year period of nonuse, unless the owner files a statement of claim in the county recorder's office, despite the statute's failure to provide for notice when the statutory period is about to expire. 454 U.S. at 530, 102 S.Ct. at 792. The issue here, however, is not whether section 40-103 could extinguish Evers's rights in the road if its requirements were met.[4] The issue is whether the County may make a determination that those requirements have been met and enforce its conclusion that the road is public without giving Evers prior notice and an opportunity to present argument and evidence that the road was her private property.
 
 
 17
 The County's actions were, as a legal and practical matter, an interference with Evers's claimed property interest. There is evidence in the record to support Evers's contention that the County believed the Declaration was necessary before it could take criminal action against her or civil action to open the road to the public. If the County chose to remove the gate, a Declaration is a necessary prerequisite under Idaho Code Secs. 40-901--906.[5] Meservey v. Gulliford, 14 Idaho 133, 93 P. 780 (1908) (interpreting predecessor statute, holding that provisions dealing with encroachments and obstructions to highways "duly laid out or erected" does not apply to highways established by prescription or user absent recordation by the County). The Forest Service, interested in establishing a legal right to use and maintain the road, urged the County to adopt the Declaration as a means of doing so.
 
 
 18
 Moreover, the Declaration was published and members of the public relied on it as an authoritative determination of their right to use the road. The sheriff's department relied on it in citing Evers for criminal obstruction of a highway and made no attempt to prevent members of the public from using the road. Under the circumstances, we must reject the County's assertion that its actions had no effect on Evers's interests. The Commissioners were seen by members of the public as the body with authority to determine the status of the road, and by Idaho law as the agency authorized to enforce the public's rights. The fact that a court might later overturn the County's determination does not diminish its significance at the time it was made.
 
 
 19
 We cannot accept the district court's conclusion that the County could not have deprived Evers of any property interest because it did not actually take control of the road. The County did everything it could, short of actually tearing down the gates, to open the road to members of the public, and officially endorsed their use of the road. A property owner's right to exclude others is "universally held to be a fundamental element of the property right." Kaiser Aetna v. United States, 444 U.S. 164, 179-80, 100 S.Ct. 383, 392-93, 62 L.Ed.2d 332 (1979). In Kaiser Aetna, the petitioners had converted a private pond into a marina by connecting it to a navigable bay. The government claimed that they could not deny the public access to the marina because, by virtue of its connection to public waters, the marina was subject to the "navigational servitude" of the federal government. The Supreme Court held that the government could not create a public easement, "result[ing] in an actual physical invasion of the privately owned [property]," 444 U.S. at 180, 100 S.Ct. at 393, without exercising its power of eminent domain and paying just compensation. The County's actions in this case resulted in a comparable interference with Evers's right to exclude others.
 
 
 20
 The invasion of the property alleged here distinguishes this case from Thompson v. Tualatin Hills Park and Recreation District, 701 F.2d 99, on which the County relies. In Tualatin, relying on the rule that government actions that merely affect the value of property do not constitute a taking, we held that the defendant's filing of a condemnation suit, later dropped, was not a taking. 701 F.2d at 101. There was no interference with the property owner's use or possession of the property. A similar rationale supported our conclusion in Matter of Northwest Homes of Chehalis, Inc., 526 F.2d 505, that due process did not require prior notice and a hearing before attachment of a defendant's property as security for judgment. We relied on the fact that the attachment merely affected the economic value of the property, and did not interfere with the owner's use or possession. Accord Speilman-Fond, Inc. v. Hanson's, Inc., 379 F.Supp. 997 (D.Ariz.1973) (three judge court) appeal dismissed 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974).
 
 
 21
 3. Prior Notice and Hearing.
 
 
 22
 In determining whether due process requires notice and a hearing before the government interferes with property rights, we compare the significance of the government interest with the significance of the private interest affected by the governmental action. See Cafeteria and Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895-96, 81 S.Ct. 1743, 1748-49, 6 L.Ed.2d 1230 (1961); United States v. Vertol H21C Registration No. N8540, 545 F.2d 648, 650 (9th Cir.1976).[6] Although Evers's actual ownership of the road is in dispute, the interest she asserts is, nonetheless, of sufficient importance to require trial on the merits. The County, on the other hand, has suggested no public interests or policies that would justify denying Evers a right to be heard. There was apparently no need for immediate action to open the road. The County did not act immediately upon receiving complaints about the closing, and held public meetings at which its possible course of action was discussed. Indeed, because it was necessary for the County to determine, to its satisfaction, that the road was public before issuing its Declaration, it was in the County's interest to have all the facts before it before making a determination which, if erroneous, could have resulted in litigation and possible tort liability. Members of the public who spoke to the Commission were unlikely to present facts that would cast any doubt on their right to use the road. As the Supreme Court has pointed out,
 
 
 23
 when a person has an opportunity to speak up in his own defense, and when the state must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights .... [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him an opportunity to meet it." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 170-72, 71 S.Ct. 624, 647-49, 95 L.Ed. 817 (Frankfurter, J., concurring).
 
 
 24
 Fuentes v. Shevin, 407 U.S. at 81, 92 S.Ct. at 1994.
 
 
 25
 Because the County, on the record before us, has shown no interest that would counterbalance Evers's interest in obtaining a fair hearing on her position, see United States v. Vertol H21C, 545 F.2d at 651, the County may have violated Evers's right to due process if it declared the road public without giving her notice and an adequate opportunity to be heard. Because there are genuine issues of material fact to be resolved, we remand for further proceedings consistent with this opinion.
 
 Immunity
 
 26
 1. Commissioners.
 
 
 27
 We affirm the district court's decision that the Commissioners were entitled to qualified good-faith immunity from suit for damages. The commissioners are not liable under section 1983 if their action "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 28
 If the law at the time the Commissioners acted was not clearly established, they "could not reasonably be expected to anticipate subsequent legal development, nor could [they] fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." Id. We agree with the district court that the law was not clearly established at the time of the Commissioners' actions. Although the Idaho Supreme Court decided in Cooper v. Board of County Commissioners, 101 Idaho 407, 614 P.2d 947 (1980), that due process required notice and a hearing before the County acted on a landowner's rezoning application, that case is sufficiently different from this one that we cannot say the Commissioners should have known their actions were unconstitutional. The Commissioners acted according to a reasonable interpretation of section 40-103, which has no provision requiring notice to the affected landowner before the County attempts to enforce it.
 
 
 29
 2. County.
 
 
 30
 The district court held that the County was immune from suit under section 1983, relying on Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Monell held that a city may be sued under section 1983 only if
 
 
 31
 the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, or decision officially adopted and promulgated by that body's officers.
 
 
 32
 Monell, 436 U.S. at 690, 98 S.Ct. at 2035. We have applied Monell to impose liability on a county. Kuzinich v. County of Santa Clara, 689 F.2d 1345, 1350 (9th Cir.1982).
 
 
 33
 It is difficult to imagine a case in which the act complained of more clearly "implements or executes a ... decision officially adopted and promulgated by that body's officers," Monell, 436 U.S. at 690, 98 S.Ct. at 2035, than does this one. The Declaration of Public Road was an official decision of the Commissioners, the County's governing body, and the criminal action was instigated at their direction. Thus, the district court erred in finding the County immune from a section 1983 suit under Monell. See Familias Unidas v. Briscoe, 619 F.2d 391, 404 (5th Cir.1980) (in areas where official is "final authority or ultimate repository of county power," the county may be liable for his official conduct).
 
 
 34
 The County argues that it should be immune because it was merely acting according to state law, rather than carrying out County policy. This argument, however, goes only to the question of the Commissioners' good faith in applying the statute. The fact that the Commissioners are immune from suit under section 1983 because of their good faith does not relieve the County from liability. See Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1979). The policies discussed by the Supreme Court in Owen fully support the imposition of liability on the County if Evers proves her case:The central aim of the Civil Rights Act was to provide protection to those persons wronged by the " '[m]isuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " Monroe v. Pape, 365 U.S. at 184 [81 S.Ct. 473 at 482, 5 L.Ed.2d 492] (quoting United States v. Classic, 313 U.S. 299, 326 [61 S.Ct. 1031, 1043, 85 L.Ed. 1368] (1941)).
 
 
 35
 * * *
 
 
 36
 * * *
 
 
 37
 The knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights. Furthermore, the threat that damages might be levied against the city might encourage those in a policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights.
 
 
 38
 Owen, 445 U.S. at 650-52, 100 S.Ct. at 1415-16 (1979).
 
 Liability of Defendants French
 
 39
 We affirm the award of summary judgment in favor of the Frenches. None of Evers's allegations against the Frenches amount to a claim of conspiracy with the County (she alleged that the Frenches complained to the Commissioners about the closing of the road while telling her they had no problem with it; that they attended the Commissioners' meetings and talked to individual Commissioners privately about the problem while deliberately excluding Evers; and that, in these discussions, they expressed a hostile attitude toward Evers). At most they urged the County to remedy the problem of the closing of what they believed was a public road. This activity falls within the first amendment's protection of the right to petition the government for redress of grievances. See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) (Sherman Act could not be applied against effort to obtain legislation harmful to truckers who competed with the railroads); Stern v. United States Gypsum, Inc., 547 F.2d 1329 (7th Cir.) (no remedy under section 1985 against defendant who complained about IRS agent's conduct to his superiors) cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607 (8th Cir.1980) (no violation of section 1983 in lobbying for a zoning amendment); Aknin v. Phillips, 404 F.Supp. 1150 (S.D.N.Y.1975) (citizens who urged village officials to remedy noise problems not liable for officials' application of unconstitutional noise ordinances), aff'd 538 F.2d 307 (2d Cir.1976).
 
 Attorney Fees
 
 40
 The district court found Evers's claim against the Frenches "so vexatious and unreasonable as to warrant the award of attorney's fees." A district court's award of attorney fees will not be reversed on appeal except for abuse of discretion. Metcalf v. Borba, 681 F.2d 1183, 1188 (9th Cir.1982). A prevailing defendant in a section 1983 action may be awarded attorney fees only if the plaintiff's claim is vexatious, frivolous, or brought merely to harass the defendant. See Hughes v. Rowe, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980).
 
 
 41
 The district court based its award on its conclusion that there was no indication that the Frenches were doing anything but exercising their constitutional rights to present their grievances to state officials. We find no abuse of discretion in the district court's decision to award fees.
 
 
 42
 The Frenches' fee request did not separate hours spent on the section 1983 defense from those spent on the counterclaim. The court estimated that about two-thirds of the attorney's time was spent on the counterclaim, and awarded the Frenches one-third of the fees they requested. Evers claims the calculation of the fee was improper, citing language from Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) which emphasizes the fact that a party requesting fee awards has the burden of presenting detailed records of the time spent, so that the judge can make a fair evaluation of the amount of fees warranted. The records should be comparable to those that a private attorney would present to a client to substantiate a fee. In this case, however, it would be impossible to distinguish the time spent on each of the two claims. Much of the factual development would have been the same for the defense as for the counterclaim. Evers argues that no award should be made if the Frenches cannot meet this burden of proving precisely how much time was spent on their defense.
 
 
 43
 The burden Evers would place on the Frenches is unwarranted. The defense and counterclaim were related, so that much of the work overlapped. The Frenches' attorney presented detailed time records, the same records that could have been used to bill the Frenches. The judge was familiar with the case, and made a reasonable estimate, awarding fees for only one-third of the time.
 
 
 44
 Evers also argues this fee award is inequitable because the Frenches' counterclaim against Evers was frivolous. However, the district court found there was at least a "fair chance" of their prevailing, and granted a preliminary injunction giving the Frenches access to the road.
 
 
 45
 Evers additionally claims she should have been awarded fees for defense of the Frenches' counterclaims because the Frenches did not get the relief they sought on those claims. However, the trial court properly held that no party had prevailed on these state claims, which were dismissed without prejudice. As to the Commissioners' appeal from the denial of their motion for attorney's fees, we find no abuse of discretion. Evers's claim against the Commissioners was not frivolous.[7]
 
 CONCLUSION
 
 46
 The judgment in favor of the County is vacated and the case is remanded for further proceedings. Judgment in favor of the Commissioners and the Frenches is affirmed.
 
 
 
 *
 Honorable William G. East, Senior U.S. District Judge, for the District of Oregon, sitting by designation
 
 
 [1]
 Idaho Code Sec. 40-501 (1977) makes it a duty of the commissioners to record as public highways roads which have become such by use
 
 
 [2]
 The charges were dismissed by a magistrate on the ground that Idaho Code Sec. 40-103 is unconstitutional. The state has appealed that decision
 
 
 [3]
 Roads laid out and recorded as highways, by order of the board of commissioners, and all roads used as such for a period of five (5) years, provided the latter shall have been worked and kept up at the expense of the public, or located and recorded by order of the board of commissioners, are highways. Whenever any corporation owning a toll bridge, or a turnpike, plank, or common wagon road is dissolved, or discontinues the road or bridge, or has expired by limitation, the bridge or road becomes a highway
 Idaho Code Sec. 40-103 (1977).
 
 
 [4]
 Although Evers claimed in her complaint that section 40-103 operated as an unconstitutional taking of property without compensation, that question was not decided on the motion for summary judgment. We express no opinion as to whether section 40-103, as interpreted by the Idaho courts, allows an uncompensated taking of property in violation of the Fifth and Fourteenth amendments
 
 
 [5]
 If any highway duly laid out or erected is encroached upon by fences, buildings, or otherwise, the road overseer of the district may, orally or in writing, require the encroachment to be removed from the highway
 Idaho Code Sec. 40-901 (1977).
 If the encroachment is not removed, or commenced to be removed, and diligently prosecuted, prior to the expiration of the ten (10) days from the service or posting the notice, the one who caused or owns or controls the encroachment forfeits ten dollars ($10.00) for each day the same continues unmoved. If the encroachment is such as to effectually obstruct and prevent the use of the road for vehicles, the overseer must forthwith remove the same.
 Idaho Code Sec. 40-903 (1977).
 
 
 [6]
 The defendants argue that under the Supreme Court's decision in Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), due process is satisfied when the state provides a post-deprivation remedy. They contend Evers has an adequate post-deprivation remedy in the form of a tort action or quiet title action. Parratt, however, does not apply to cases in which the deprivation of property is effected pursuant to a state procedure and the government is therefore in a position to provide for predeprivation process. See Hudson v. Palmer, --- U.S. ----, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984)
 
 
 [7]
 Our reversal of the judgment in favor of the County renders moot their appeal from the district court's denial of attorney fees