106 F.3d 409
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John STIGLICH, Plaintiff-Appellant,
v.
CONTRA COSTA COUNTY BOARD OF SUPERVISORS; Contra Costa
County Fire Protection District; Sunne McPeak; Tom Powers;
Phil Batchelor; United Professional Fire Fighters of
Contra Costa County; International Association of Fire
Fighters, et al.; Robert Eason; Robert Adams; Michael
Price, Defendants-Appellees,
John STIGLICH, Plaintiff-Appellee,
v.
CONTRA COSTA COUNTY BOARD OF SUPERVISORS; Contra Costa
County Fire Protection District; Sunne McPeak;
Tom Powers; Phil Batchelor;
International Association of
Fire Fighters, Defendants,
and
United Professional Fire Fighters of Contra Costa Co.;
Robert Eason; Robert Adams; Michael Price,
Defendants-Appellants.
 Nos. 95-15698, 95-17437.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1996.
Decided Jan. 17, 1997.
 
 Before: RONEY,* BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John Stiglich appeals the district court's dismissal of his RICO claim as well as the district court's grant of summary judgment on his remaining federal civil rights and California tort claims. Stiglich sued the County Board of Supervisors, the local and international fire fighters' unions, as well as various officials of these entities, for their alleged illegal conspiracy to eliminate his position in the county fire department. Defendant-Appellee Local 1230 and its officials appeal the district court's denial of their request for attorney's fees under 42 U.S.C. § 1988, costs under 28 U.S.C. § 1927 and sanctions under Rule 11. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * In February, 1991, the Contra Costa County Board of Supervisors ("the Board of Supervisors" or "the Board") created the position of Administrative Fire Officer ("AFO") and promoted Plaintiff-Appellant John Stiglich to that position. The Board did not require that Stiglich take a competitive examination to qualify for the AFO position. Nine months later in October, 1991, the Board eliminated Stiglich's position as AFO and restored him to his prior position as Senior Fire Fighter. The Board cut eleven jobs in total, including Stiglich's, allegedly as part of its budget reduction plan. The remaining ten positions eliminated were vacant.
 
 
 4
 Stiglich believes his "demotion" was the result of corrupt political dealings between officials of the local fire fighters' union, the United Professional Fire Fighters of Contra Costa County Local 1230 ("Local 1230" or "the Union"), and members of the Board of Supervisors. Local 1230 is an affiliate of the International Association of Fire Fighters (the "International Union" or "International"). The International provides advice and support to its members and local affiliates. Defendants Robert Eason, Robert Adams and Michael Price are officers of Local 1230.
 
 
 5
 Stiglich joined Local 1230 in 1971 and served as its President from 1976 until 1981, when he lost his bid for reelection. He has feuded with Union officials since 1986, when Local 1230 was involved in collective bargaining negotiations with the County. Negotiations deadlocked over salary issues. Stiglich, then a Union member, supported the County's proposal and publicly criticized the Union's opposition. Union officials were outraged by Stiglich's comments and accused him of both undermining their bargaining strategy and violating Union rules.
 
 
 6
 Local 1230 officials, including defendants Eason and Adams, filed charges with the Union against Stiglich. The Union trial board convicted Stiglich and expelled him from the Union. He successfully appealed to the Union's International Executive Board, which reversed the expulsion order and imposed a fine instead. The Executive Board also temporarily banned Stiglich from holding Union office. Stiglich refused to pay his fine and the Union revoked his membership in 1989.
 
 
 7
 Stiglich's relationship with the Union has remained adversarial. He contends that the Union has continually sought to punish his past disloyalty. He claims that Local 1230's efforts to remove him as AFO are only the latest in a series of attacks against him. He also blames the Union for vandalizing his house and car and for harassing him with phone threats.
 
 
 8
 Local 1230 has opposed Stiglich's promotion to AFO both through the grievance process and through the political process. Local 1230 grieved Stiglich's promotion on the ground that it violated the Memorandum of Understanding between Local 1230 and the County. That agreement gives Local 1230 officials the right to approve promotions made by reclassification without examination. Local 1230 has also lobbied County officials in an effort to resolve the "Stiglich problem."
 
 
 9
 Stiglich contends that Local 1230 officials illegally influenced Board Supervisors Sunne McPeak and Tom Powers through "bribes" to gain their support. Stiglich cites both Supervisors' changed votes on the AFO issue as evidence of Local 1230's influence. Both McPeak and Powers originally voted in favor of Stiglich's promotion to AFO, but both later voted for the budget reduction plan that eliminated Stiglich's job. Stiglich claims that the budget cutting rationale was merely a pretext for his illegal demotion. He contends he was fired both to placate Local 1230 and also to stifle his investigation into fire fighter's alleged abuse of sick leave.
 
 
 10
 Stiglich notes that the original budget submitted by Fire Chief Maxfield did not include the elimination of the AFO position. Maxfield claims he proposed the elimination of the AFO position only to comply with orders from County Administrator Phil Batchelor. Maxfield believes that Batchelor was acting on orders from Supervisor McPeak.
 
 
 11
 Stiglich claims that Local 1230 gained McPeak's vote by threatening to petition for a recall election of her seat. McPeak met with Union officials to discuss the issue of Stiglich's promotion. When she later changed her vote, no recall election was initiated. Stiglich alleges that Union officials influenced Supervisor Powers by threatening to withhold campaign funds from his wife's campaign for the Richmond City Council. Local 1230 officials met with Powers and discussed the Stiglich issue. Powers later changed his vote and supported the budget reduction plan, and his wife later received campaign funds from the Union. Richmond Fire Fighters donated $1000 to Mrs. Donna Powers' campaign, the same sum donated to four other Richmond City Council candidates supported by the Richmond Fire Fighters.
 
 
 12
 In May, 1992, Stiglich filed a five-count complaint in the Northern District of California. He named as defendants the Board of Supervisors, Supervisors McPeak and Powers and County Administrator Phil Batchelor (collectively the "County Defendants"), Local 1230 and its officials, Robert Eason, Robert Adams and Michael Price (collectively the "Local 1230 defendants"), and the International Union. Stiglich alleged violations of his federal civil rights under 42 U.S.C. § 1983 (Count I) and the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68 (Count II). He also asserted claims under California tort law for wrongful termination (Count III), intentional infliction of emotional distress (Count IV), and negligent supervision (against the International Union) (Count V).
 
 
 13
 Stiglich never reached trial on any of his claims. He settled with the County defendants, and his remaining claims were resolved by defendants' dispositive motions. The district court dismissed Stiglich's Count II RICO claim and later granted summary judgment on the remaining claims. The parties had filed cross motions for summary judgment, and Judge Walker originally granted summary judgment in favor of the defendants on December 28, 1993. The district court later vacated this order because at the time summary judgment was entered Stiglich's motion to reconsider a discovery ruling was pending. The district court determined that this discovery request may have had an effect on the issues presented by the pending motion for summary judgment.
 
 
 14
 The parties later renewed their motions for summary judgment, and on March 21, 1995 the trial judge, now Judge Claudia Wilken, granted defendants' motions for summary judgment in their entirety. At the time of that decision plaintiff's motion to compel discovery against the International Union was pending before the district court.
 
 
 15
 After prevailing on summary judgment, the Local 1230 defendants moved for attorney's fees pursuant to 42 U.S.C. § 1988, costs pursuant to 28 U.S.C. § 1927, and sanctions under Rule 11 of the Federal Rules of Civil Procedure. The district court referred this petition to Magistrate Judge Brennan, who recommended that defendants' request be denied. The defendants filed timely objections with the district court, and on November 8, 1995 the district court adopted the Magistrate Judge's recommendation. The Local 1230 defendants now appeal that ruling.
 
 
 16
 Although Stiglich's position was ultimately eliminated by the budget reduction plan, he was later reappointed AFO in August, 1992 as part of his settlement with the County. Local 1230 again filed a grievance opposing Stiglich's promotion and prevailed. An arbitrator held Stiglich's promotion invalid and ordered the County to hold a competitive examination to fill the AFO position. The California Superior Court upheld the arbitrator's decision.
 
 II
 
 17
 Stiglich appeals the district court's dismissal of his RICO claim on the grounds that Local 1230's threats to McPeak and Powers constitute predicate acts. We review de novo a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
 
 
 18
 To prevail on a civil RICO theory, Stiglich must establish: (1) a "pattern of racketeering activity," including at least two "predicate acts," (2) a criminal enterprise in which defendants participate, and (3) a causal relationship between the predicate acts and the harm suffered. See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496-97 (1985); 18 U.S.C. §§ 1961-68.
 
 
 19
 Stiglich does not allege sufficient facts to establish a pattern of racketeering activity because he failed to establish at least two predicate acts. Local 1230's threat of a recall election is a valid political activity, not a predicate act of racketeering. Similarly, Local 1230 officials violated no laws by donating campaign funds to Mrs. Donna Powers.
 
 
 20
 Stiglich's claim that Local 1230 engaged in mail and wire fraud and embezzlement in relation to the "fraudulent sick leave scheme" conducted by local fire fighters also fails to establish the necessary predicate acts. As the district court concluded, these activities do not qualify as predicate acts because Stiglich's alleged injuries, harassment and the loss of his position as AFO, do not flow directly from the sick leave scandal. Stiglich fails to establish how he was directly injured by the alleged sick leave scam. See Sedima, 473 U.S. at 496 ("[A] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.").
 
 III
 
 21
 Stiglich also argues that the district court erred in granting summary judgment on his federal civil rights and California tort claims. We review a district court's grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine whether the evidence, viewed in a light most favorable to the nonmoving party, presents any genuine issues of material fact and whether the district court correctly applied the law. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996).
 
 
 22
 * Stiglich argues that the district court erred in granting summary judgment on his conspiracy claim because his evidence, both direct and circumstantial, establishes genuine issues of material fact. To establish a conspiracy between Local 1230 and county officials under § 1983, Stiglich must show an agreement or meeting of the minds to violate his constitutional rights. Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir.1989) (citing Fonda v. Gray, 707 F.2d 435, 438 (9th Cir.1983)). Section 1983 requires state action. Thus Stiglich can only implicate Local 1230 officials, private actors, under § 1983 by showing that they "willfully participated in joint action with state officials to deprive [him of his] constitutional rights." United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1540 (9th Cir.), cert. denied, 493 U.S. 809 (1989).
 
 
 23
 Stiglich's evidence establishes neither a conspiracy nor a constitutional deprivation. His conspiracy claim revolves around the Union's alleged "bribes" to McPeak and Powers. Stiglich contends that Local 1230 influenced McPeak by threatening to organize a recall election. According to Stiglich, Local 1230 influenced Powers by threatening to withhold political contributions to his wife's campaign.
 
 
 24
 These alleged "conspiratorial acts" constitute valid uses of the political process protected by the First Amendment. The First Amendment protects citizens' rights to petition the government for redress of grievances. Evers v. County of Custer, 745 F.2d 1196, 1204 (9th Cir.1984). Citizens remain free to voice their complaints and seek change even if their efforts to influence the political process result in harm to a third party. See id. The Noerr-Pennington doctrine protects genuine efforts to petition the government which may result in harms despite the lawful nature of the petition itself. See Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1251-52 (9th Cir.1982), cert. denied, 459 U.S. 1227 (1983); see, e.g., Evers, 745 F.2d at 1204; Christian Gospel Church, Inc. v. City and County of San Francisco, 896 F.2d 1221, 1226 (9th Cir.), cert. denied, 498 U.S. 999 (1990).
 
 
 25
 Here, Stiglich provides no evidence that Local 1230 and its officials sought to do anything more than legitimately lobby their elected officials. Stiglich ignores the controlling legal premise that, as the district court concluded, "[o]ne cannot commit bribery or extortion by threatening to do a lawful act."
 
 
 26
 Further, Stiglich has failed to allege a constitutional violation. At issue is Stiglich's Fourteenth Amendment property interest in his tenured employment, not the right against political retaliation. This property right entitles Stiglich to due process when this right is denied or infringed; the fact that he enjoys this right does not immunize him from being either demoted or fired.
 
 B
 
 27
 Stiglich also argues that his other conspiracy evidence, both circumstantial and direct, creates a genuine issue of material fact and thus merits submission to a jury. Stiglich may rely on indirect or circumstantial evidence to buttress his conspiracy claim. See Phelps Dodge, 865 F.2d at 1546-47. He must, however, provide specific facts showing that a conspiracy exists in order to survive summary judgment. He does not. Stiglich presents no evidence of an implicit agreement between Union and County officials to conspire to remove him. Nor does he provide any evidence from which a jury could conclude that his position was eliminated as an effort to prevent him from revealing the alleged sick leave abuses.
 
 
 28
 Stiglich unpersuasively argues that United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, requires reversal. Phelps Dodge does not compensate for Stiglich's evidentiary shortcomings and is easily distinguishable. Most significantly Phelps Dodge dealt with an admitted conspiracy and addressed only the issue of whether Phelps Dodge was a party to that conspiracy. Id. There is no admitted conspiracy here. Nor does Local 1230 enjoy the level of power and influence that Phelps Dodge did in its company-owned town. Id. at 1543.
 
 C
 
 29
 Stiglich also claims that the district court erred in granting summary judgment on his conspiracy and emotional distress claims because Local 1230's failure to abide by the district court's discovery order requiring disclosure of certain documents and tapes creates genuine issues of material fact.
 
 
 30
 Stiglich asks this court to hold, for the purpose of summary judgment, that defendants' failure to comply with discovery compels an inference that such evidence was damning to their defense. Stiglich relies on the following facts: that Local 1230 recorded its meetings on tape, detailed the minutes of its meetings in writing, and maintained this information in their files. The Union does not dispute these facts, and they have admitted that at least one tape is missing.
 
 
 31
 Magistrate Judge Brennan addressed the issue of the missing tape and concluded that there was no bad faith involved in the disappearance of that tape. Stiglich nonetheless argues at length about the defendants' bad faith during discovery. He claims he "never obtained full discovery" and repeatedly points to missing tapes and documents. He tries to revive various discovery disputes while explicitly arguing that he does not seek review of any of the district court's discovery orders. Nor does he now seek disclosure of those materials or to have discovery reopened. Rather, Stiglich argues that his evidence of suppression and destruction should be presented to a jury for its consideration.
 
 
 32
 Stiglich's arguments are meritless because he fails to provide specific facts supporting his claims. He cannot create factual disputes for the purposes of summary judgment with allegations and speculation alone. Nelson v. Pima Community College, 83 F.3d 1075, 1081-82 (9th Cir.1996). He must adduce specific facts that demonstrate a triable issue. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989); see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959 (9th Cir.1994) (citations omitted) ("[O]nce the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence sufficient to support a jury verdict in her favor."). Here, Stiglich fails to do so.
 
 D
 
 33
 Stiglich next argues that the district court erred in granting summary judgment on his Count V agency claim. Stiglich seeks to hold the International Union liable for Local 1230's actions, namely its alleged harassment of Stiglich, on an agency theory.
 
 
 34
 Stiglich first complains that the district court never ruled on his motion to compel documents regarding the International's payment of Local 1230's legal fees in this case. Again, Stiglich does not ask us to review any of the district court's discovery rulings, nor does he seek to reopen discovery. In the absence of such a request, we need not address this matter.
 
 
 35
 As to Stiglich's substantive challenge, it too fails for a want of relevant evidence. To establish an agency relationship Stiglich must present evidence that indicates that the International "instigated, supported, ratified or encouraged [Local 1230's] activities or that the Local acted pursuant to its agreement with the International." Moore v. Local Union 569 of Int'l Bhd. of Elec. Workers, 989 F.2d 1534, 1543 (9th Cir.1993) (citing Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212, 218 (1979)), cert. denied, 510 U.S. 1117 (1994). The law does not impose on an international union an inherent duty to its affiliates. See United States v. International Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1453-54 (9th Cir.1989).
 
 
 36
 Stiglich's evidence, as to his agency claim, is largely documentary. He relies on various provisions of the International's Constitution and By-Laws as evidence of the agency relationship between the International and Local 1230. These provisions, however, do not provide evidence that the International "instigated, supported, ratified or encouraged" Local 1230's behavior with respect to Stiglich. Moore, 989 F.2d at 1543. These documents merely set forth the International's rules and regulations. Decisions as to local matters lie almost exclusively with local officials. See International Union of Petroleum and Indus. Workers, 870 F.2d at 1453-54.
 
 
 37
 Stiglich also points to the International's alleged offer to pay Local 1230's litigation costs in this matter as evidence of an agency relationship. The International did provide Local 1230 with financial aid, but explicitly declined to provide Local 1230 funds for this litigation. Even if the International did finance Local 1230's defense, a post-conduct grant itself does not establish the requisite encouragement or ratification.
 
 IV
 
 38
 The Local 1230 defendants filed a separate appeal contesting the district court's failure to: (A) award attorney's fees under 42 U.S.C. § 1988, (B) assess costs under 29 U.S.C. § 1927 or (C) impose sanctions under Rule 11 of the Federal Rules of Civil Procedure.
 
 
 39
 * We review a district court's denial of attorney's fees under 42 U.S.C. § 1988 for an abuse of discretion. Harris v. Marhoefer, 24 F.3d 16, 18 (9th Cir.1994). Title 42 U.S.C. § 1988 authorizes the award of attorney's fees to prevailing defendants only when the court finds that the underlying claim or claims were "unreasonable, frivolous, meritless, or vexatious." Vernon v. City of Los Angeles, 27 F.3d 1385, 1402 (9th Cir.) (citations omitted), cert. denied, 115 S.Ct. 510 (1994). Courts do not award such fees merely because "prevailing defendants" succeed; courts only award fees to prevailing defendants in exceptional circumstances. Mitchell v. Los Angeles Comm. College Dist., 861 F.2d 198, 202 (9th Cir.1988), cert. denied, 490 U.S. 1081 (1989).
 
 
 40
 This case is not exceptional; the district court did not abuse its discretion in denying defendants' fee petition. Plaintiff's evidence was noticeably weak in certain regards but that fact alone does not prove that the suit was necessarily "unreasonable, frivolous, meritless, or vexatious." Vernon, 27 F.3d at 1402. Stiglich provided facts which facially supported the outline of his legal theories and he proceeded accordingly. See Vernon, 27 F.2d at 1402 ("An appeal is considered frivolous in this Circuit when the result is obvious or the appellant's arguments of error are wholly without merit.") (citing McConnell v. Critchlow, 661 F.2d 116, 118 (9th Cir.1981)).
 
 
 41
 Defendants argue that the district court erred by focusing on the "confrontational nature" of the litigation in denying fees. The district court did, however, consider the merits of Stiglich's suit and concluded that the "plaintiff had reason to believe that his allegations were not altogether frivolous or without merit." The district court also noted that "the court's orders did not indicate that the court believed plaintiff's contentions to be meritless."
 
 B
 
 42
 We review the award of sanctions under 28 U.S.C. § 1927 for an abuse of discretion. Wages v. IRS, 915 F.2d 1230, 1235 (9th Cir.1990), cert. denied, 498 U.S. 1096 (1991). We will reverse a district court's factual findings as to whether an attorney acted recklessly or in bad faith only if they are clearly erroneous. Kanarek v. Hatch, 827 F.2d 1389, 1391 (9th Cir.1987).
 
 
 43
 Title 28 U.S.C. § 1927 punishes the multiplication of proceedings. See Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir.1986). Courts award fees and costs under 28 U.S.C. § 1927 if an attorney "so multiplies the proceedings in any case unreasonably and vexatiously." Section 1927 sanctions are premised on a finding of subjective bad faith. New Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir.1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir.1986) (citations omitted).
 
 
 44
 As noted above, Stiglich's complaint was not frivolous, thus in order to prevail under § 1927 the Local 1230 defendants must show that Stiglich's filings were intended to harass. In re Keegan Management Co., Securities Litigation, 78 F.3d 431, 436 (9th Cir.1996). Defendants assert that Stiglich multiplied the proceedings by taking his claims to federal court, having previously argued these claims in state court. This argument is disingenuous given the prior state court action dealt only with the discrete issue arising out of the grievance arbitration. Furthermore, absent Stiglich's bad faith or an intent to harass, this fact alone is not legally relevant.
 
 C
 
 45
 We review the imposition of sanctions under Rule 11 for an abuse of discretion. Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990). Rule 11 sanctions are appropriate if the allegations and other factual contentions entirely lack evidentiary support. Fed.R.Civ.P. 11(b)-(c). Sanctions are proper when a party "insist[s] upon a position after it is no longer tenable...." Id. (Advisory Committee Notes). Stiglich committed neither wrong. He provided affidavits, depositions and other documents of evidentiary value. He did not pursue untenable claims. Although the district judge warned of the potential futility of Stiglich's conspiracy claim, he did not dismiss this claim under Federal Rule 12(b)(6) given the possibility of a viable legal theory developing under the facts alleged. The district court did not abuse its discretion in denying fees under Rule 11.
 
 
 46
 AFFIRMED.
 
 
 
 *
 The Honorable Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3