Rudecindo CAMINERO, individually and on behalf of all others similarly situated, Plaintiffs,

v.

The Honorable Sheldon M. RAND, in his official capacity as Judge of the Family Court, individually and on behalf of all others similarly situated; Alan H. Channing, in his official capacity as Executive Director of Bellevue Hospital; Jo Ivey Boufford, M.D., in her official capacity as President of the New York City Health and Hospitals Corporation; and Richard C. Surles, Ph.D., individually and in his official capacity as Commissioner of Mental Health for the State of New York, Defendants.

No. 89 Civ. 3841 (MJL).

United States District Court, S.D. New York.

March 25, 1995.

New York Civ. Liberties Union Foundation by Robert M. Levy, New York City, Mental Disability Law Clinic by William M. Brooks, Huntington, Debevoise & Plimpton, of counsel by Donald F. Donovan, Philomena A. Burke, Russell I. Hartman, New York City, for plaintiffs.

Paul A. Crotty, Corp. Counsel of the City of N.Y. (Inga Van Eysden, Masako C. Shiono, of counsel), New York City, for Municipal Defendants.

## OPINION AND ORDER

LOWE, District Judge.

In this action, Plaintiff Rudecindo Caminero, individually and on behalf of all others similarly situated, challenges the constitutionality of Section 251 of the New York Family Court Act ("Section 251"), both on its face and as applied.[1]

Currently before the Court are: (1) Plaintiff's objections to the June 30, 1994, Report and Recommendation of Magistrate Judge Buchwald ("Report"), recommending that this Court grant the motion of Defendants Boufford and Channing to dismiss for failure to state a claim upon which relief can be granted Plaintiff's individual claims against them for damages and expungement of hospital records under 42 U.S.C. § 1983 ("Section 1983") ("motion to dismiss");[2] and (2) in the event that this Court adopts the Report's recommendation that the motion to dismiss be granted, Plaintiff's motion to amend the complaint. Defendants Boufford and Channing (collectively, the "City Defendants") are sued in their official capacities as the Executive Director of Bellevue Hospital ("Bellevue") and the President of the New York City Health and Hospitals Corporation ("Health and Hospitals Corporation"), respectively.

In connection with the motion to dismiss, the Magistrate Judge requested that the parties brief the following question:[3]

> Given that plaintiff was remanded to Bellevue Hospital for eleven days *pursuant to court order*, which if disobeyed could lead to a citation for contempt, what actions could/should defendants have taken to avoid official capacity liability under 42 U.S.C. § 1983[?]

The Magistrate Judge found this issue dispositive of Plaintiff's claims and held that

---

1. On the date this suit was filed, Section 251 provided, in relevant part, as follows:

   > After the filing of a petition under this act over which the family court appears to have jurisdiction, the court may cause any person within its jurisdiction and the parent or other person legally responsible for the care of any child within its jurisdiction to be examined by a physician, psychiatrist or psychologist appointed or designated for the purpose by the court when such an examination will serve the purposes of this act[. T]he court, during or after a hearing, may remand for a period not exceeding thirty days any such person for physical or psychiatric study or observation [to a designated facility.]

   On July 21, 1993, the New York State legislature enacted a modified version of Section 251, co-authored by counsel for Plaintiff and the state Defendant. The amended section requires that the Family Court hold a formal fact-finding hearing in which the need for evaluation in a residential facility is demonstrated before remanding an individual for inpatient evaluation. The amended section also requires that the time period of the remand be determined by the psychiatric institution. The text of the amended section is set forth in footnote 2 of the Magistrate Judge's Report and Recommendation.

2. The City Defendants' motion to dismiss initially addressed the entirety of Plaintiff's complaint against them. However, the City Defendants and Plaintiff subsequently agreed that the motion would only be considered by the Court with regard to Plaintiff's individual claims against the City Defendants for damages and expungement of hospital records (Counts 1–6 of the Amended Complaint). *See* Report at 1–4.

3. The City Defendants' original brief in support of their motion to dismiss argued that: (1) Section 251 was constitutional; (2) the court should abstain from determining the constitutionality of Section 251; (3) Plaintiff's complaint fails to name any defendant having an appropriate adversary interest in defending the constitutionality of Section 251; (4) a class action is not superior to other methods of adjudicating this action; and (5) injunctive relief is inappropriate in this case.

Plaintiff's complaint failed to state a claim upon which relief could be granted against the City Defendants under Section 1983.[4] The Report therefore recommends granting the City Defendants' motion to dismiss. The Plaintiff filed objections to this recommendation.[5]

For the reasons stated herein, the Court finds that the City Defendants' motion to dismiss must be denied, and the Court therefore declines to rule on Plaintiff's motion to amend the complaint.[6]

## BACKGROUND

The Magistrate Judge has thoroughly and ably set forth the allegations of Plaintiff's complaint, *see* Report at 5–9, and those allegations need only be summarized here.

On October 27, 1988, Plaintiff appeared before Judge Sheldon M. Rand in New York County Family Court to contest his former wife's order of protection. Following Mrs. Caminero's comment that Plaintiff "should be seen by a doctor or somebody because I don't believe he's well and I don't trust him," Judge Rand directed that Plaintiff be examined by a court psychiatrist. The psychiatrist conducted a brief examination of Plaintiff and informed the court of her belief that Plaintiff was paranoid, posed a risk to himself or others, and required hospitalization. Judge Rand, acting pursuant to the authority conferred by Section 251, ordered that Plaintiff be remanded to the custody of the Health and Hospitals Corporation for eleven (11) days of observation. Judge Rand's order directed the Health and Hospitals Corporation not to release Plaintiff, but to return him to the Family Court. Plaintiff received nei-

ther prior notice of the Section 251 proceeding nor opportunities to obtain counsel or be heard as to his involuntary commitment.

Bellevue Hospital, a facility maintained by the Health and Hospitals Corporation, subsequently admitted and confined Plaintiff without obtaining Plaintiff's consent and without making any independent findings that either: (1) Plaintiff was mentally ill, in need of confinement, and/or dangerous to himself or others; or (2) the evaluation ordered by Judge Rand could not be achieved by less restrictive means. Nor did Bellevue provide Plaintiff with: (1) notice of the basis of his confinement; (2) an opportunity to challenge his confinement; or (3) the assistance of counsel. Plaintiff alleges that this treatment was the result of Defendant Channing's policy of admitting and confining persons remanded to Bellevue pursuant to Section 251 ("Section 251 remandees") without: (1) determining whether less restrictive measures are available; (2) making independent findings as to dangerousness; and (3) providing the requisite procedural guarantees. Both Channing and Boufford had authority over the admissions to Bellevue of persons remanded under Section 251.

Plaintiff was returned to Family Court on November 7, 1988 with a report from Dr. Andrea Hessel of Bellevue stating that Plaintiff had demonstrated no abnormal behavior or overt psychotic symptoms during his hospital stay. However, a court-appointed psychiatrist, who reviewed the report and spoke with Doctor Hessel, testified that Bellevue's examination was inadequate and that Plaintiff should be returned for further evaluation.

---

4. The Magistrate Judge also found that the doctrine of res judicata did not bar the Plaintiff's claims. Neither party has objected to that portion of the Report, and the Court has satisfied itself that there is no clear error on the face of the record. Consequently, that portion of the Report is accepted and need not be discussed herein. *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 859 F.Supp. 743, 749 (S.D.N.Y. 1994); *Alvarez v. Scully*, 833 F.Supp. 1000, 1003 (S.D.N.Y.1993); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y.1988); Fed.R.Civ.P. 72(b) advisory committee's note.

5. The City Defendants have made no objection to any portion of the Report.

6. Plaintiff's memorandum indicates that his motion to amend is made "in the alternative," should the objections to the Report be overruled. Pl.'s Objs. and Mem. at 2–3. Plaintiff's motion seeks to add the allegation that the Health and Hospitals Corporation issued, after commencement of this lawsuit, a directive stating that individuals remanded for evaluation pursuant to Section 251 are not to be admitted solely on the basis of a Family Court order, but are to be admitted in accordance with standard admission policies and procedures. Second Am.Class Compl. ¶ 76.

On the basis of this recommendation, Judge Rand directed that Plaintiff be returned to Bellevue until November 17, 1988. Plaintiff was readmitted to Bellevue pursuant to the same policy or custom, and with the same absence of findings and procedures, that he alleges with regard to his first admission.

Because Bellevue failed to forward its second report to the court on time, Plaintiff's hearing was rescheduled for November 28, 1988, at which time Doctor Hessel informed the court-appointed psychiatrist that she would not have admitted Plaintiff to Bellevue in the first place. On that same date, after thirty-two days of confinement, Plaintiff was permitted to return home.

## DISCUSSION

### I. Legal Standards

A court may only grant a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In considering a motion to dismiss, a court treats all material factual allegations in the complaint as true, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* — U.S. —, —, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Cohen v. Koenig,* 25 F.3d 1168, 1171–72 (2d Cir.1994), and reads the complaint generously, drawing all reasonable inferences in plaintiff's favor, *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989).

Because the City Defendants are sued only in their official capacities, Plaintiff's claims against them are treated as claims against the Health and Hospitals Corporation itself. *See Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978);

*Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993). The Health and Hospitals Corporation is a municipal corporation subject to the principles of municipal liability set forth in *Monell.* *See Rookard v. Health and Hospitals Corp.,* 710 F.2d 41, 45 (2d Cir.1983).

In *Monell,* the Supreme Court ruled that municipalities are "persons" within the meaning of 42 U.S.C. § 1983 ("Section 1983"). *Monell* 436 U.S. at 690, 98 S.Ct. at 2035. Section 1983 provides a remedy against "any person" who, under color of state law, deprives another of rights secured by the Constitution and the laws of the United States.[7] The *Monell* Court determined that a Section 1983 claim could not be maintained against a municipality purely on the basis of *respondeat superior,* but that such a claim could be maintained if "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. at 2037–38.

■ In analyzing claims against municipalities brought pursuant to Section 1983, courts employ the following two-pronged test: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992).

### II. Demonstration of a Constitutional Violation

■ The Report holds that the factual allegations of Plaintiff's complaint state a claim for the violation of Plaintiff's constitutional rights. Specifically, the Magistrate Judge found that Plaintiff's complaint states that his involuntary confinement in a psychiatric hospital involved both "a denial of plaintiff's rights to substantive due process, as he alleg-

---

7. Section 1983 provides in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States of other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

es that he did not pose a danger to himself or others," Report at 13, and a denial of Plaintiff's rights to procedural due process, as he alleges "that he was provided with *none* of the traditional hallmarks of procedural due process," *id.* at 14 (emphasis in original).

Neither the Plaintiff nor the City Defendants object to the Magistrate Judge's conclusion that Plaintiff's complaint sufficiently satisfies, for purposes of surviving a motion to dismiss under Rule 12(b)(6), the first prong of the *Collins* analysis. The Court, having reviewed this portion of the Report, and having satisfied itself that there is no clear error on the face of the record, accepts the Magistrate Judge's recommendation in this regard. *McMahan,* 859 F.Supp. at 749; *Alvarez,* 833 F.Supp. at 1003; *Walker,* 679 F.Supp. at 374; Fed.R.Civ.P. 72(b) advisory committee's note.

### III. *Demonstration of the City Defendants' Responsibility for the Constitutional Violation*

#### A. *The Report and Plaintiff's Objections*

The Report holds that although Plaintiff sufficiently pleads a constitutional violation, the City Defendants cannot be held responsible for that violation. The Magistrate Judge reasons that at the time Plaintiff arrived at Bellevue pursuant to Judge Rand's order, the City Defendants had no immediate alternative but to admit him to the hospital. According to the Report, the City Defendants can only be held responsible for complying with a court order, and to hold a municipality "liable for conduct required by court order would disregard the responsibility requirement of *Monell.*" Report at 26. While acknowledging that the City Defendants could have mounted a legal challenge to Section 251 and "perhaps .. should ... have recognized the serious constitutional problems inherent in Section 251," the Report holds that

Plaintiff's complaint fails to demonstrate "that the City Defendants 'officially sanctioned or ordered' the practice of involuntar[il]y hospitalizing remandees from Family Court." *Id.* at 17–19. Thus, the Report concludes that "Plaintiff has not satisfied the 'responsibility' prong of the *Collins* test, and his complaint therefore fails to state a claim upon which relief can be granted." *Id.* at 28.

Plaintiff objects to this portion of the Report, arguing that the City Defendants are responsible for Bellevue's admissions policies and that those policies caused the violation of Plaintiff's constitutional rights.[8] The Court now undertakes a de novo determination of the portion of the Report to which Plaintiff objects. Fed.R.Civ.P. 72(b).

#### B. *The Issue Presented*

Having accepted, for purposes of this motion to dismiss, that Plaintiff's involuntary commitment involved a constitutional violation, the Court must determine whether the allegations of Plaintiff's complaint, if taken as true, demonstrate the City Defendants' responsibility for that constitutional violation. *Collins,* 503 U.S. at 120, 112 S.Ct. at 1066. The particular question presented by this case is whether, and to what extent, Section 251 and Judge Rand's order affect a finding as to the City Defendants' responsibility for Plaintiff's constitutional deprivation.[9]

#### C. *Case Law Relevant to the Issue of "Responsibility"*

The City Defendants can only be held liable under Section 1983 if there is "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989), and the City Defendants are in some way "at fault" for the deprivation's occurrence, *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985).

---

**8.** Plaintiff also objects to the Report on the grounds that his expungement claims do not require a finding of a municipal custom or policy. Because the Court finds that Plaintiff has sufficiently plead a municipal custom or policy responsible for his constitutional deprivation, the Court need not, and does not, reach the issue of whether such a finding is necessary to Plaintiff's expungement claims.

**9.** The Court notes that the City Defendants do not, at this stage of the proceedings, challenge Channing and Boufford's policy-making authority with regard to the subject matter at issue. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 482–83, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality opinion).

It is quite apparent to this Court that (1) had the City Defendants maintained a policy of admitting patients in the absence of findings and procedures of which Plaintiff complains, (2) had that policy been established in the absence of Section 251 and Judge Rand's order, and (3) had Plaintiff been committed to Bellevue pursuant to that policy, Plaintiff's allegations would sufficiently plead the City Defendants' responsibility for Plaintiff's alleged constitutional deprivation. The question is whether the existence of Section 251 and the Family Court order so attenuate the connection between the City Defendants' conduct and Plaintiff's deprivation that the City Defendants cannot be deemed responsible for that deprivation for purposes of Section 1983 liability.

The Second Circuit has not yet explicitly articulated its position on what effect, if any, a state's mandate or authorization of a municipal policy has on that municipality's liability for the policy under Section 1983. This Court therefore looks for initial guidance to the decisions of other federal courts that have considered the issue. While the relevant cases of the other federal courts are not entirely consistent, two general strands of cases may be discerned.

On the one hand, at least one circuit has held that a municipality's constitutional policy of "enforcing state law" cannot be the basis for Section 1983 liability. *Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788 (7th Cir.1991). In *Surplus*, the plaintiff store alleged that a police officer had seized two gold rings from it and returned the rings to their purported owner without providing a judicial hearing. *Id.* Three state statutes apparently authorized the police officer to seize and dispose of the rings in the manner alleged. *Id.* at 790–91. The Seventh Circuit held the store's Section 1983 claim untenable, finding that plaintiff's complaint failed to allege any city policy or custom in any way connected to the alleged deprivation, and ruling that the general policy of enforcing state law is not a sufficient basis for Section 1983 liability. *Id.* at 790–92.

A district court within the Seventh Circuit has held the mere enforcement of state law to be an inadequate basis for Section 1983 liability in circumstances where the municipality acted according to state law in an area over which the municipality had neither a duty nor the authority to set policy. *Thompson v. Duke*, 1987 WL 33188 at *5–6 (N.D.Ill. 1988), *aff'd*, 882 F.2d 1180 (7th Cir.1989), *cert. denied*, 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990) (county's incarceration of parolee without making independent finding as to validity of his incarceration could not provide a basis for Section 1983 liability where the county acted according to its duties under state law and had no duty or authority to determine the validity of the parolee's confinement).

On the other hand, a number of cases indicate that the official adoption or implementation of an unconstitutional municipal policy provides a sufficient basis for Section 1983 liability even when that policy is authorized or mandated by state law. In *Garner v. Memphis Police Dep't*, the Sixth Circuit held that the city police department's adoption of a policy allowing officers to use deadly force against various suspects, including fleeing burglars, provided a basis for Section 1983 liability even though the policy was authorized by a state statute that permitted an even broader use of deadly force. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364–65 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).

In *Evers v. County of Custer*, a property owner claimed that the defendant county interfered with her property rights without due process of law by declaring a road on her land to be public and by serving her with a citation for interference with a public highway. *Evers v. County of Custer*, 745 F.2d 1196, 1198–99 (9th Cir.1984). State statutes in *Evers* both (1) rendered roads public after a certain period of public use and maintenance and (2) gave the county commissioners the duty to record as public highways roads which had thereby become public. *Id.* at 1198 n. 1, 1200 n. 3. The Ninth Circuit held that the declaration and criminal action, although made pursuant to the state statutes, clearly constituted official actions which could provide a basis for the county's Section 1983 liability. *Id.* at 1203. The *Evers* court noted

that Section 1983's policy of encouraging officials to err on the side of protecting citizen's constitutional rights supported the imposition of liability on the county in the event plaintiff was able to prove her case. *Id.* at 1203–04 (quoting *Owen v. City of Independence,* 445 U.S. 622, 650–52, 100 S.Ct. 1398, 1415–16, 63 L.Ed.2d 673 (1980)).

Finally, in *Davis v. City of Camden,* a fellow district court ruled that the defendant county could be held liable under Section 1983 for its official adoption of an unconstitutional policy of strip searching persons in county jail even though that policy was mandated by state law. *Davis v. City of Camden,* 657 F.Supp. 396, 402–04 (D.N.J.1987). The *Davis* court relied in part on its finding that Section 1983's policy of compensating victims of unconstitutional state action would be served by imposing Section 1983 liability on municipalities which officially adopt unconstitutional policies mandated by state law. *Id.* at 403 (quoting *Owen,* 445 U.S. at 655, 100 S.Ct. at 1417).

The Second Circuit has addressed a related issue in an appeal contesting an attorney's fee award against a county in a Section 1983 case challenging an element of New York state's social services program. *Koster v. Perales,* 903 F.2d 131, 136–38 (2d Cir.1990). While the merits of the case had been decided by stipulation, the award and allocation of attorney's fees were made by the district court. The Second Circuit affirmed the attorney's fee award against the county, reasoning that the county was responsible for administration of the challenged portion of the social services program and that plaintiff's complaint challenged the county's own policy as well that of the state.

This Court need not decide whether each of the holdings of *Surplus, Garner, Evers,* and *Davis* will be fully followed by the Second Circuit. The Court believes, however, that these four cases, along with *Koster,* suggest a reasoned distinction between (1) cases in which a plaintiff alleges that a municipality inflicted a constitutional deprivation by adopting an unconstitutional policy that was in some way authorized or mandated by state law and (2) cases in which a plaintiff alleges that a municipality, which adopted no specific policy in the area at issue, caused a constitutional deprivation by simply enforcing state law. While allegations of the former type have been found to provide a basis for Section 1983 liability, *see Garner,* 8 F.3d at 364–65; *Evers,* 745 F.2d at 1203; *Davis,* 657 F.Supp. at 402–04, allegations of the latter variety *may not* [10] provide a remedy against the municipality, *see Surplus,* 928 F.2d at 790–92; *Thompson,* 1987 WL 33188 at *5–6.

### D. *The "Policy or Custom" at Issue*

Before applying the relevant case law to the case at hand, the Court must first delineate the particular municipal "policy or custom" which Plaintiff's complaint alleges. In making such a delineation at the dismissal stage, the Court must, of course, (1) treat all material factual allegations in the complaint as true, *Leatherman,* —— U.S. at ——, 113 S.Ct. at 1161; *Cohen,* 25 F.3d at 1171–72, (2) read the complaint generously, drawing all reasonable inferences in plaintiff's favor, *Cosmas,* 886 F.2d at 11, and (3) determine if Plaintiff can prove any "set of facts in support of his claim which would entitle him to relief," *Yusuf,* 35 F.3d at 713 (quoting *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02).

The Report characterizes the City Defendants' actions as "mere" acquiescence in orders of Family Court judges, *see* Report at 16, 19, and holds that the case law does not support a finding of Section 1983 "responsibility" with regard to those actions.

The Magistrate Judge's characterization of Plaintiff's allegations appears to be based on a very narrow view of the pleadings. While Plaintiff's allegations may be interpreted to charge the City Defendants with employing a policy or custom of following court orders, they may, with equal ease, be cast in a different light. Plaintiff's complaint may, for example, be read to charge the City Defendants with officially adopting or executing a policy, in an area over which the City Defendants had policy-making authority, of admitting Section 251 remandees to Bellevue for involuntary confinement without making in-

---

**10.** Because the Court finds Plaintiff's claim to be of the former variety, it makes no finding as to whether a claim of the latter type can support Section 1983 liability.

dependent findings as to the dangerousness of the remandees or as to less restrictive, available alternatives and without providing the requisite procedural safeguards.[11] The latter policy may be more generally described as one of confining individuals without due process of law. These two possible characterizations of Plaintiff's allegations carry strikingly different connotations. The former policy or custom appears constitutional on its face and is arguably not a "policy" at all, while the latter appears unconstitutional on its face and implies affirmative adoption of a policy decision. The discussion of the relevant case law in the preceding section clearly demonstrates that the Court's consideration of one characterization rather than another will be highly significant to the Court's analysis, if not outcome determinative of the case. In light of the importance of the characterization used and the standards that a court must apply in deciding a motion to dismiss, the Court rejects the Magistrate Judge's narrow reading of Plaintiff's allegations and instead utilizes the reasonable characterization of Plaintiff's allegations that is most favorable to Plaintiff. Thus, for purposes of this motion, Plaintiff's complaint charges the City Defendants with adopting a policy of admitting certain individuals to Bellevue without substantive or procedural due process.

### E. Alternatives Available to the City Defendants

■ Before applying the relevant case law to the policy deemed at issue here, the Court must address the Magistrate Judge's apparent finding that the City Defendants lacked any alternative to their actions and that Plaintiff therefore failed to sufficiently plead *any* municipal policy. The Report states that "the City defendants had no immediate

alternative but to admit [Plaintiff] for psychiatric observation pursuant to Judge Rand's order," Report at 16, and that, although the City Defendants could have brought a declaratory judgment action challenging Section 251, their failure to do so "does not transform the mere following of a court order into a municipal 'policy.' " *Id.* at 19. The Supreme Court has pointed out that the word 'policy' implies a choice of action among various alternatives. *See Tuttle,* 471 U.S. at 823, 105 S.Ct. at 2436; *Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300.

The Magistrate Judge's finding of no municipal policy was made within the context of her inquiry into whether the City Defendants had any immediate alternative to obeying the Family Court order. This Court believes that the relevant question should be framed somewhat differently. In light of the alleged policy or custom which this Court has determined to consider, the question is whether the City Defendants had alternatives to maintaining a policy or custom of confining individuals without first making the requisite findings or providing the requisite procedures.

The Court finds that Plaintiff's allegations, along with all reasonable inferences drawn in Plaintiff's favor, allow a finding that the City Defendants had alternatives to (1) maintaining the custom or policy alleged and (2) confining Plaintiff for thirty-two (32) days pursuant to that custom or policy. The City Defendants could, for example, have established a policy of only admitting involuntary patients after making an independent finding of the patients' dangerousness. Had the City Defendants attempted to follow such a policy with respect to Plaintiff and found that he did not meet their criteria for admission,

---

11. *See* Amended Complaint ¶¶ 15 ("Defendant Jo Ivey Boufford ... has authority over the admission and care of all persons involuntarily remanded under section 251 to hospitals ... operated by the New York City Health and Hospitals Corporation"), 59 ("[D]efendant Channing or his agents admitted plaintiff [to Bellevue] solely on the authority of defendant Judge Rand's order of remand pursuant to section 251"), 71 ("Defendant Channing has authority over admissions to Bellevue"), 73 ("Defendant Channing maintains a policy of admitting and confining persons remanded to Bellevue pursuant to section 251

without determining whether less restrictive alternatives are available"), 74 ("Defendant Channing maintains a policy of admitting and confining persons remanded to Bellevue pursuant to section 251 without making a finding of dangerousness"), 75 ("Defendant Channing maintains a policy of admitting and confining persons pursuant to section 251 without affording them requisite procedural guarantees"); N.Y.Unconsol.Law. § 7385 ¶ 8 (McKinney 1979) (the Health and Hospitals Corporation has the power "to make rules and regulations governing admissions").

they could have either (1) returned Plaintiff to Family Court and sought to have the remand order modified on the grounds that they did not believe they could constitutionally admit Plaintiff,[12] (2) temporarily admitted Plaintiff and immediately sought to have Judge Rand modify the order on the same grounds, or (3) temporarily admitted Plaintiff and immediately sought to challenge the constitutionality of Section 251 in a declaratory judgment action.[13] Thus, while the City Defendants *arguably* had no *immediate* alternative to obeying the court order,[14] they had alternatives to admitting and then confining Plaintiff for thirty-two (32) days without first ensuring that his confinement satisfied the requirements of a constitutional admissions policy. The Court holds, therefore, that the City Defendants' purported lack of alternatives fails to provide a basis on which to grant their motion to dismiss.[15]

### F. *Application of Case Law to Policy or Custom at Issue*

■ The Court finds that the Plaintiff's allegations sufficiently plead the official adoption or execution by the City Defendants of an allegedly unconstitutional policy to place this case within the parameters of *Garner, Evers, Davis,* and *Koster,* and to implicate sufficient municipal responsibility to sustain Section 1983 liability. Plaintiff's complaint may be read to charge the City Defendants with depriving him of his constitutional rights by officially adopting a policy or custom of confining certain individuals without making findings as to the dangerousness of those individuals or as to less restrictive available alternatives and without providing procedural safeguards. In light of the reasoning of the case law discussed earlier in this opinion and Section 1983's aims of (1) compensating victims of unconstitutional state action and (2) creating "an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights," *Owen,* 445 U.S. at 650–52, 655, 100 S.Ct. at 1415–16, 1417, the Court believes that Plaintiff's allegations may prove to be a sufficient basis for imposing Section 1983 liability on the City Defendants despite the fact that the City Defendants' actions were, to some extent, constrained by the Family Court order made pursuant to Section 251. Thus, while Section 251 and Judge Rand's order also played roles in Plaintiff's involuntary confinement, Plaintiff's complaint sufficiently demonstrates, for purposes of surviving a motion to dismiss, that there was a "direct causal link" between Plaintiff's confinement and the City Defendants' alleged policy or custom, *see Harris,* 489 U.S. at 385, 109 S.Ct. at 1203, and that the City Defendants are in some way "at fault" for Plaintiff's deprivation, *Tuttle,* 471 U.S. at 818, 105 S.Ct. at 2433, and may be liable for that deprivation under Section 1983. *See Garner,* 8 F.3d at 364–65; *Evers,* 745 F.2d at 1203; *Davis,* 657 F.Supp. at 402–04.

## CONCLUSION

For the foregoing reasons, it is hereby ordered that Defendants Boufford and Channing's motion to dismiss, as narrowed by the

---

**12.** It is unclear from the pleadings whether this action would have subjected the City Defendants to a finding of contempt. Given that the order required the City Defendants not to release Plaintiff, but to return him to Family Court, the Court infers, for the purposes of this motion to dismiss only, that such an action would not have left the City Defendants vulnerable to a contempt finding.

**13.** The Court makes no finding as to whether any of these three alternatives would have also left the City Defendants vulnerable to Plaintiff's constitutional challenges. Even if these alternatives would not have prevented Plaintiff's constitutional deprivation, however, they may have been able to reduce both the degree of that deprivation and the City Defendants' responsibility therefore.

**14.** The City Defendants could also have released Plaintiff had they found him unsuitable for admission. Had they done so, however, they may have been subject to a finding of contempt, *see* Report at 16–17.

**15.** As noted earlier in this opinion, *see* note 6, Plaintiff moves, in the alternative, to amend his complaint to allege that during the pendency of this lawsuit, the Health and Hospitals Corporation issued a directive stating that Section 251 remandees were not to be admitted solely on the basis of a Family Court order. Because this Court rules in Plaintiff's favor on the motion to dismiss without resort to this amendment, the Court makes no finding as to the import of the new allegation.

parties, is denied. The Court declines to address Plaintiff's motion to amend his complaint.

It is SO ORDERED.