**SUPREME OIL COMPANY,
Plaintiff–Appellant,**

v.

**METROPOLITAN TRANSPORTATION AUTHORITY, Metro–North Commuter Rail Division and New York City Transit Authority, Defendants–Appellees.**

No. 97–9581.

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1998.

Decided Oct. 5, 1998.

Leo J. Kimmel, Brooklyn, NY, for Plain-
tiff–Appellant.

Anthony P. Semancik, New York City for Defendants–Appellees.

Before: KEARSE, Circuit Judge and BRIEANT and JOHNSON, District Judges[*]

PER CURIAM:

## I.

In 1979 the City of New York, on behalf of the New York City Transit Authority ("NYCTA"), condemned Supreme Oil Company's ("Supreme") Queens, New York, factory as part of a project to construct a new subway line. Supreme searched for a site to relocate its business, and eventually purchased the lot at 80 South Dean Street in Englewood, New Jersey ("Lot 2"), to which Supreme moved in 1981.

The subway project that forced the condemnation of Supreme's location in Queens was funded in part by a grant to the Metropolitian Transportation Authority ("MTA") from the United States Urban Mass Transportation Administration, an agency within the United States Department of Transportation. Due to this arrangement, Supreme was eligible to apply for relocation benefits under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA") which provides compensation to individuals and businesses displaced in the course of federally funded projects. See 42 U.S.C. § 4601 et seq. The URA provides, in pertinent part, that "the displacing agency" shall make payment to the displaced "person" of:

(1) actual reasonable expenses in moving himself, his family, business, . . . or other personal property;

(2) actual direct losses of tangible personal property as a result of moving or discontinuing a business . . . but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property as determined by the head of the agency;

(3) actual reasonable expenses in searching for a replacement business . . .

42 U.S.C. § 4622(a).

In order to receive federal funds for projects, such as the subway construction that forced Supreme's displacement, state and local agencies must certify that they will provide relocation benefits under the URA to affected persons and businesses. See 42 U.S.C. § 4604. The grantee agency may contract with another public or private agency to administer the relocation benefits, but the actual grantee remains at all times responsible for assuring that the federal funds are disbursed in compliance with the URA. In this case, MTA, the grantee agency, entered into a third-party contract with the New York City Department of Housing Preservation and Development ("HPD"), to administer URA claims and payments on MTA's behalf.

Following its relocation to Englewood in 1981, Supreme filed several claims for URA benefits with HPD. Through 1984, HPD paid Supreme a total of $693,367.31 for three separate relocation claims. The first $430,991.31 of these payments was for two separate moving cost claims and the remaining $261,376 was for a "Physical Change Claim" stemming from Supreme's construction of off-street parking and related outdoor improvements at the Lot 2 relocation site. The payment for Supreme's moving expenses is not the subject of the parties' present dispute. The Lot 2 Physical Change Claim, however, is directly related to the present appeal.

On October 26, 1982, Supreme sought and obtained approval for its relocation site from the Englewood Planning Board. Upon receiving this approval, Supreme was then required to obtain a Certificate of Occupancy ("C/O") for the new location. On January 4, 1985, Englewood issued a C/O to Supreme for Lot 2.

In August of 1985, Supreme purchased a lot adjacent to Lot 2, located at 100 South Dean Street ("Lot 3"). On October 31, 1988, Supreme formally filed a Second Physical

---

[*] Honorable Charles L. Brieant, of the United States District Court for the Southern District of New York, and Honorable Sterling Johnson, Jr., of the United States District Court for the Eastern District of New York, sitting by designation.

Change Claim with HPD, seeking benefits for work contemplated on the combined Lot 2/Lot 3 site. For purposes of this litigation, the parties entered into a stipulation dated March 6, 1997, stating that HPD did approve and recommend payment for at least part of Supreme's Second Physical Change Claim. In October of 1989, HPD sought the necessary funds from MTA to pay this claim. MTA, however, refused to advance these funds.

Eventually, HPD Assistant Commissioner Peter Cantillo requested that Al Shehadi, the department Director of Operations, prepare a final agency determination on Supreme's Second Physical Change Claim. After examining the documentation relating to the claim and meeting with representatives from Supreme, Shehadi concluded that the claim should be rejected in its entirety because it was not directly related to Supreme's initial relocation as required under the URA.

Soon thereafter, Supreme requested and was granted the opportunity to appeal Shehadi's final agency determination denying compensation for its Second Physical Change Claim. An HPD attorney, Al Schmidt, was initially assigned as a hearing officer in this administrative proceeding, but he was soon replaced by Roslyn Gottlieb. Schmidt, however, subsequently served as an attorney to HPD during this administrative hearing held before Gottlieb. Gottlieb affirmed Shehadi's denial of the claim for many of the same reasons as Shehadi, but also considered information and issues not known nor addressed by Shehadi. Most significantly, she had available testimony and documents concerning the C/O for Lot 2 issued to Supreme in January of 1985 permitting her to find that Supreme had withheld evidence of having obtained the C/O, and that Supreme had already complied with all legal requirements for occupancy, leaving it ineligible for further reimbursement.

In July of 1996, Supreme commenced a proceeding in New York State Supreme Court to appeal HPD's denial of its claim. On July 7, 1996 that action was removed to the Southern District of New York. In an order filed October 2, 1997, the district court granted defendants' motion for summary judgment and dismissed Supreme's claim in its entirety.

## II.

It is well established that on appeal from a grant of summary judgment on a claim brought under the Administrative Procedure Act ("APA"), we review the administrative record *de novo* and accord no deference to the decision of the district court. *City of New York v. Shalala,* 34 F.3d 1161, 1166 (2d Cir.1994). Under the APA, a federal court may set aside an agency's findings, conclusions or actions only if they are "arbitrary, capricious, an abuse of discretion, ... otherwise not in accordance with the law," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A) and (E). We thus review an agency's determination as would a district court, which means that we will set aside an agency's findings "only if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Henley v. Food and Drug Admin.,* 77 F.3d 616, 619 (2d Cir.1996).

Review of an administrative agency's denial of URA relocation benefits is under this narrow "arbitrary, capricious, ... abuse of discretion standard." *See* 5 U.S.C. §§ 706(2)(A) and ·(E); *see also Ackerley Comms. of Florida, Inc. v. Henderson,* 881 F.2d 990, 991 (11th· Cir.1989) (holding that Congress intended that agency decisions under the URA be reviewed under section 706 of the APA); *Nagi v. United States,* 751 F.2d 826, 828 (6th Cir.1985) (reviewing administrative agency's actions in denying benefits under the URA under the standards set forth in the APA §§ 706(2)(A) and (E)). We choose to follow the holdings of these circuits and apply an abuse of discretion standard in reviewing the denial of URA relocation benefits to Supreme.

Reviewing *de novo* the district court's decision under the same deferential APA standard applied by the district court, we conclude the decision by HPD to deny Supreme's claim on the Second Physical Change Claim was neither arbitrary nor capricious. First, the work performed in connection with the Second Physical Change

Claim was not compensable because it was not the "direct result" of, or reasonably related to, Supreme's 1981 relocation from Queens, New York. *See* 42 U.S.C. §§ 4622(a) and 4601(6)(A)(ii)(I). The hearing officer's determination that the installation of new outdoor improvements under the 1987 Site Plan were not the direct result of Supreme's relocation to the Englewood site was based on substantial evidence in the record. Supreme contends that the 1987 Site Plan included different and additional requirements that were caused solely by unforeseen traffic problems outside its new plant and which the City of Englewood mandated as a prerequisite to issuing a final certificate of occupancy. The installation of new outdoor improvements under the 1987 Site Plan were not the direct result of Supreme's relocation to the Englewood site. In fact, the 1987 Site Plan was the result of Supreme's decision to expand its business by purchasing Lot 3 in 1985, combining it with Lot 2 and adding new site improvements. In other words, the claim was not based on conditions that existed at the time of Supreme's move to Englewood.

 We agree with defendants that Congress did not intend the URA to put a business in a better position in the relocation site than the position occupied at the original site and, accordingly, a business relocatee is not entitled to compensation for expenses that constitute an enhancement. As the URA's legislative history suggests, the maximum compensation payable for a relocation claim is set by what improvements the claimant lost at its original site:

> A person displaced from a business or farm operation may be compensated for actual direct property losses, whether he discontinues or reestablishes his operation. However, the maximum amount of any such payment may not exceed the reasonable expenses that would have been required to relocate the property, and in the case of heavy machinery, equipment, or other property involving substantial sums, also should not exceed the in-place value of such property.

H.R.Rep. No. 91–1656 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5850, 5856.

Nothing under the URA suggests a continuing obligation on the part of the federal government to pay for a business expansion or to comply with local codes after the business' initial relocation. As such, the district court properly "defer[ed] to a permissible interpretation espoused by the agency entrusted with the [URA's] implementation." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 414, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993).

Second, Supreme's entitlement to relocation benefits ceased when it received its C/O for Lot 2 in 1985. As the district court noted, "the most damning evidence in the administrative record, of course, is the fact that Supreme was issued a C/O for Lot 2 in January 1985." The New Jersey Uniform Construction Code Act provides that "[a] certificate of occupancy shall be issued by the enforcing agency when *all* the work covered by a construction permit shall have been completed in accordance with the permit, the code and other applicable laws and ordinances." N.J. Stat. § 52:27D–133 (emphasis added). Therefore, HPD's obligations to Supreme under the URA were satisfied when Supreme received its C/O for Lot 2 in January of 1985. Because it was neither arbitrary nor capricious for HPD to conclude that Englewood's 1985 issuance of a C/O barred Supreme's Second Physical Change Claim, the district court correctly upheld the administrative decision in this case. *See Coalition of New York State Career Schs., Inc. v. Riley*, 129 F.3d 276, 279 (2d Cir.1997) (an agency's construction of a statute "will be upheld so long as it is plausible and does not otherwise conflict with Congress' expressed intent").

 Finally, Supreme argues it was denied procedural due process by HPD and MTA in its review of Supreme's URA claim. Most troubling of these alleged due process violations was Supreme's contention that HPD attorney Al Schmidt, whom HPD initially appointed as the hearing officer for Supreme's administrative appeal and who was replaced by Roslyn Gottlieb, later became the attorney for HPD. Notwithstanding this inappropriate participation of attorney Schmidt in the administrative appeal, there is

no showing of a due process violation which led to any prejudice to Supreme, since it shows no entitlement to federal funding for an expansion of its operations, and "a non-contractual claim to receive funds from the public treasury enjoys no constitutionally protected status." *Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

### III.

For the reasons stated above, we affirm the decision of the district court.