**COMMUNITY HEALTH CARE ASSOCIATION OF NEW YORK, Peekskill Area Health Center, Lutheran Medical Center, William F. Ryan Community Health Center, Syracuse Community Health Center, Bedford Stuyvesant Family Health Center, Joseph P. Addabbo Family Health Center, Centercare, Westchester Prepaid Health Services Plan, and Health Plus, Plaintiffs,**

v.

**Nancy–Ann Min DEPARLE, in her official capacity as Administrator, Health Care Financing Administration, Donna Shalala, in her official capacity as Secretary, United States Department of Health and Human Services, Kevin P. Mahon, in his official capacity as Commissioner, Westchester County Department of Social Services, and Barbara Debuono, in her official capacity as Commissioner, New York State Department of Health, Defendants.**

No. 98 Civ. 4539(BDP).

United States District Court, S.D. New York.

Sept. 27, 1999.

John E. Linville, Kalkines Arky Zall & Bernstein LLP, New York City, for plaintiff.

Samuel S. Chin, Office of the Attorney's General, New York City, for State defendants.

Audrey Daniel, Westchester County District Attorney's Office, White Plains, NY, for Westchester County defendant.

Jeffrey Oestericher, United States Attorney's Office, New York City, for Federal defendants.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiffs are six New York state outpatient medical facilities designated by the federal government as federally qualified health centers ("FQHCs"); three managed care plans affiliated with FQHCs, and an association of FQHCs in New York state. Defendants are Donna Shalala, Secretary of the United States Department of Health and Human Services ("HHS"); Nancy–Ann Min DeParle, the Administrator of the Health Care Financing Administration ("HCFA"), which is part of HHS; Barbara DeBuono, Commissioner of the New York State Department of Health, and Kevin P. Mahon, Commissioner of the Westchester County Department of Social Services ("WCDSS").

Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983, and the Administrative Procedure Act, 5 U.S.C. § 500, et seq., seeking a declaratory judgment that local, state and federal officials violated the cost reimbursement provision of the federal Medicaid program. *See* 42 U.S.C. § 1396(b)(m)(2), et seq. Before this Court are (1) federal defendants DeParle and Shalala's motion to dismiss the complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6); (2) the county defendant Mahon's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6); and (3) the state defendant Barbara DeBuono's motion to dismiss the complaint pursuant to Rules 12(b)(1) and (6). This Court will address each motion separately.

## BACKGROUND

 In deciding a 12(b)(6) motion, the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Thomas v. City of New York,* 143 F.3d 31, 37 (2d Cir.1998). Likewise, in considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the Court must accept as true all material factual allegations in the Complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *Serrano v. 900 5th Avenue Corp.,* 4 F.Supp.2d 315, 316 (S.D.N.Y.1998). The following facts, common to all three motions, are construed accordingly.

### A. Medicaid Managed Care Plans (the "plans")

This case involves the administration of one portion of Medicaid, the federal program which provides federally subsidized health insurance to eligible, typically low-income, residents of states that voluntarily elect to participate. Enacted in 1965 under Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., Medicaid is a joint federal and state cost-sharing system "designed to enable participating states to furnish medical assistance to persons whose income and resources are insufficient to meet the costs of necessary medical care and services." *DeJesus v. Perales,* 770 F.2d 316, 318 (2d Cir.1985).

New York joined the Medicaid program in 1966, authorizing the New York State Department of Social Services ("NYSDSS") to establish a Medicaid plan covering both the categorically and the medically needy. *See* 1966 N.Y.Laws, ch. 256, as amended § N.Y.Soc.Serv.Law 363 et seq. While participation in Medicaid is voluntary, New York's Medicaid plan must be approved by the federal Health Care Financing Administration ("HCFA"), as meeting the standards and conditions set by federal law. 42 U.S.C. § 1396a(a).

In Medicaid programs, eligible patients receive health care services from health-care "providers" including hospitals, doctors and outpatient health centers, which are enrolled and paid by the states. Although the payment is made by states, in New York, the State treasury contributes about 25% of the program's cost. N.Y.Soc. Serv.L. § 368–a(1)(d). Approximately fifty percent comes from the federal government and the remaining 25% or so comes from local governments.

This case involves Medicaid managed care, a form of Medicaid service delivery and reimbursement where the state or its local social service district contracts with managed care plans. The managed care plan receives a fixed monthly fee for each Medicaid patient that enrolls in the plan. The plan, which is responsible for providing the Medicaid services needed by the enrolled patient, fulfills that obligation by contracting with providers of medical services which are paid by the plan according to relevant contractual provisions. In New York, as in all states, the HCFA approves the contracts between the state or local social service districts and Medicaid managed care plans.

Plaintiffs in this action are organizations providing Medicaid services to eligible patients. They include six outpatient facilities located in New York state known as federally qualified health centers ("FQHCs").[1] Three other plaintiffs are managed care plans affiliated with FQHCs and the final plaintiff is an association of FQHCs in New York state.

### B. 42 U.S.C. § 1396b(m)(2)(A)(ix)—Reasonable Cost Reimbursement.

This case concerns a provision of the Medicaid law that was in effect from 1990 until October 1, 1997. Since 1989 Congress has required state Medicaid programs to pay FQHCs a fee-for-service medicaid rate which covers 100% of their

---

1. FQHCs must be governed by a community board and must offer comprehensive medical and social services to the residents of their communities without regard to ability to pay. 42 U.S.C § 254b.

"reasonable costs" for treating Medicaid recipients. In 1990, Congress extended the mandate to state Medicaid managed care programs under 42 U.S.C. § 1396b(m)(2)(A)(ix), the provision of federal medicaid law at issue in this case.[2] Under this law, in order for the federal government to pay its share of Medicaid expenses, plaintiffs allege states were required to include in their contracts with managed care plans provisions allowing the plans to elect reasonable cost reimbursement to FQHCs and requiring the states to reimburse the plans for the extra costs of paying reasonable cost reimbursement. The FQHC reasonable cost reimbursement provisions were amended by the Balanced Budget Act of 1997. *See* Balanced Budget Act of 1997 § 4712(b), Pub.L. 105–33. Under the Balanced Budget Act, states are now required to pay reasonable cost reimbursement directly to FQHCs who render services to Medicaid managed care patients, as opposed to reimbursing the plans themselves. *See* 42 U.S.C. §§ 1396a(A)(13)(C)(i) and 1396b(m)(2)(A)(ix). Plaintiffs do not allege that any of the defendants have violated the new reasonable cost provision.

Plaintiffs allege that from 1990 through October 1, 1997, the period during which reasonable cost reimbursement was in effect, New York state, Westchester County and other local social service districts never put the required provisions in their contracts with Medicaid managed care plans. As a result, plaintiffs allege, *inter alia*, that no FQHC in New York state was able to elect to receive, or has received, the reasonable cost reimbursement to which they were entitled.

Plaintiffs allege that from 1995 through 1998, plaintiffs repeatedly wrote, telephoned and met with federal, state and local officials attempting to effect compliance with the FQHC reasonable cost reimbursement requirements. HCFA, which approved New York state's contracts with Medicaid managed care plans, received a warning from its sister agency, the Federal Health Resource Service Administration (HRSA) that New York was not in compliance with the provision. Plaintiffs allege that despite this warning, HCFA did nothing to insure New York's compliance. In May 1997, New York state advised plaintiffs that it would not act on plaintiffs' request, but would rather wait for HCFA to reach a decision.

HCFA's decision was announced in April 1998, following a February 14, 1998 meeting between plaintiffs and the HCFA Administrator, defendant Nancy–Ann Min DeParle. In her ruling, Deparle determined that New York FQHCs were not entitled to receive reasonable cost reimbursement because there was "no clear, written expression of intent by the FQHCs to seek and receive cost-based reimbursement." Plaintiffs' Memorandum of Law in Opposition to Federal Defendants [hereinafter Plaintiffs' Opposition to Federal Defendants] at 5. This lawsuit followed.

Plaintiffs have sued officials in Westchester County, New York state and the federal governments alleging they were responsible for the policy decisions that led to violations at issue here. The sole relief requested against all defendants is a declaratory judgment. With respect to defendant DeBuono, plaintiffs seek a declaration that the actions of the New York

2. This provision provides in relevant part:
(2)(A) ... no payment shall be made under this subchapter to a State with respect to expenditures incurred by it for payment ... for services provided by any entity ... which is responsible for the provision ... of inpatient hospital services and any other service described in paragraph (2), (3), (4), (5), or (7) of section 1396d(a) of this title ... unless—
....

(ix) such contract provides, in the case of an entity that has entered into a contract for the provision of services with a Federally-qualified health center or a rural health clinic, that the entity shall provide payment that is not less than the level and amount of payment which the entity would make for the services if the services were furnished by a provider which is not a Federally-qualified health center or a rural health clinic;

State Department of Health resulting in the failure to make reasonable cost reimbursement available to New York FQHCs serving medicaid managed care patients from 1990 to October 1, 1997, violated federal law. With respect to the federal defendants DeParle and Shalala, plaintiffs seek a declaration that the actions of HCFA resulting in the failure of New York State to comply with the reasonable cost reimbursement requirement for Medicaid managed care plans from 1990 to October 1, 1997, were arbitrary and capricious and violated federal law. Finally, with respect to the County defendants, plaintiffs seek a declaration that the County's failure to guarantee in their contracts reasonable cost reimbursement of services provided by FQHCs violated federal law.

## DISCUSSION

Dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) is permitted " 'only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief.' " *Scotto v. Almenas,* 143 F.3d 105, 109–10 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The task of the court in ruling on a Rule 12(b)(6) motion is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984)).

### A. State Defendant DeBuono's Motion to Dismiss

State defendant Barbara DeBuono, Commissioner of the New York State Department of Health, moves to dismiss the complaint on grounds that the Eleventh Amendment bars plaintiffs' claims against her. State defendants erroneously assert that plaintiffs seek retroactive monetary relief, when in fact, plaintiffs seek only retroactive declaratory relief. This error by defendants, however, does not prevent this Court from resolving defendant De-Buono's motion.

#### 1. Eleventh Amendment

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

A State that has not consented to being sued is immune from suits brought in federal courts by its own citizens as well as by citizens of another state. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In order to be sued in federal court, a state must expressly and in no uncertain terms waive its Eleventh Amendment immunity. *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 305, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) ("The Court will give effect to a State's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.") (internal quotations omitted). In the absence of consent, a suit for monetary damages in which the State, or one of its agencies or departments, is named as the defendant is proscribed by the Eleventh Amendment.

When a suit is brought against state officials, it is not always clear whether that suit is a suit against the State itself. *Id.* at 101, 104 S.Ct. 900. "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.' " *Id.* (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). The general rule, then, is that relief sought nominally against a state official is in fact against the state if the decree would operate against the latter. *Id.*

There is an important, though limited, exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State. *Id.* at 102, 104 S.Ct. 900.

In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, (1974), the Supreme Court emphasized that the Eleventh Amendment bars some forms of injunctive relief against state officials for violation of federal law. *See Pennhurst,* 465 U.S. at 102, 104 S.Ct. 900; *Edelman,* 415 U.S. at 666–67, 94 S.Ct. 1347. In particular, *Edelman, supra,* held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. 415 U.S. at 666–67, 94 S.Ct. 1347; *Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. 900. "[S]uch a suit would not be one against the State since the federal-law allegation would strip the state officer of his official authority. Nevertheless, retroactive relief [is] barred by the Eleventh Amendment." *Pennhurst,* 465 U.S. at 103, 104 S.Ct. 900; *see also Kentucky v. Graham,* 473 U.S. 159, 165–167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (suit for damages against state officer in official capacity is barred by Eleventh Amendment).

The Supreme Court addressed the interplay between § 1983 and the Eleventh Amendment in *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), noting that through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Id.* at 27, 112 S.Ct. 358. The Supreme Court continued:

> [T]he Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983.... "Insofar as [plaintiffs] seeks damages against [defendants] personally, the Eleventh Amendment does not restrict their ability to sue in federal court...." [S]tate officials, sued in their individual capacities, are "persons" within the meaning of

§ 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts.

*Id.* at 31, 112 S.Ct. 358 (internal citations omitted); *see also Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993). In *Ying Jing,* the Court noted that,

> The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state. As to a claim brought against him in his individual capacity, however, the state official has no Eleventh Amendment immunity.

996 F.2d at 529. Here, state defendant Barbara DeBuono is being sued in her official capacity.

### 2. Retroactive Declaratory Relief

The Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, permits a federal court to declare the rights of a party whether or not further relief is, or could be sought. Under this Act, declaratory relief may be available even though an injunction is not. *Green v. Mansour,* 474 U.S. 64, 72, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). The Supreme Court has held, however, that "the declaratory judgment statute is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* (internal quotations omitted). The propriety of issuing a declaratory judgment may depend upon equitable considerations, and is "informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* (internal quotations omitted).

In *Green v. Mansour, supra,* the Supreme Court held that the Eleventh Amendment and applicable principles governing the issuance of declaratory judgments forbid the award of a declaration that state officials' prior conduct violated

federal law. 474 U.S. at 65–66, 106 S.Ct. 423. *Green* involved a situation similar to the one at issue here. In *Green,* plaintiffs brought two class actions in federal district court in Michigan against the Michigan Department of Social Services (the "Department") claiming that the Department miscalculated benefit awards under the federal program Aid to Families with Dependent Children ("AFDC"). *Id.* at 65, 106 S.Ct. 423. Plaintiffs alleged that as a result, participants in the AFDC program either received less than the benefits to which they were entitled or were wrongly terminated from the program. *Id.* at 65, 106 S.Ct. 423. Before a final determination of the claims presented, Congress amended the relevant statutory provisions. As is the case here, it was undisputed in *Green* that defendants had conformed to the new law.

Applying Eleventh Amendment principles, the *Green* Court affirmed the district court's refusal to issue a declaratory judgement that state officials violated federal law in the past where there was no ongoing violation of federal law. 474 U.S. at 73, 106 S.Ct. 423. Justice Rehnquist held that a declaratory judgment that the current conduct of state officials violated federal law and an order enjoining those officials from continuing to violate federal law would have been permissible under the Eleventh Amendment, while a declaratory judgment with regard to the state officials' past violations of federal law in administering the AFDC program was barred by the Eleventh Amendment. *See id.* at 69, 106 S.Ct. 423.

> There is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction. Nor can there be any threat of state officials violating the repealed law in the future. Cf. *Steffel v. Thompson, supra,* 415 U.S. at 454, 94 S.Ct. at 1213. There is a dispute about the lawfulness of respondent's past actions, but the Eleventh Amendment would prohibit the award of money damages or restitution if that dispute were resolved in favor of [plaintiffs]. We think that the award of a declaratory

judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But, the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.... [A] declaratory judgment is not available when the result would be a partial "end run" around our decision in Edelman v. Jordan.

*Id.* at 73, 106 S.Ct. 423.

In *Marbley v. Bane,* 57 F.3d 224 (2d Cir.1995), our Court of Appeals followed the Supreme Court's reasoning in *Green* to hold that the Eleventh Amendment barred a retrospective declaration of a violation of federal law by state social service officials in administering a program providing subsidies for the heating costs of low-income individuals. 57 F.3d at 232. In *Marbley,* the state had rescinded the challenged policy before the lawsuit was resolved. *Id.* at 232 n. 2. The *Marbley* Court explained that, "[a]fter dismissal of [plaintiff]'s claims for prospective relief as moot, there was nothing left of her case but a claim for retrospective declaratory judgment and an injunction. *Green* forbids such a declaration, and there is therefore no reason to entertain [plaintiff]'s claim for injunctive relief." *Id.* at 232.

Plaintiffs argue that *Green* is different from the instant case because, *inter alia,* in *Green* the only defendant was a state official, whereas here, defendants include county and federal officials against whom the suit would proceed if the state defendant was dismissed on Eleventh Amendment grounds. Plaintiffs argue that declaratory judgments "are routinely granted against state officials as long as there is an independent basis—such as prospective injunctive relief—for the fed-

eral court's consideration of the issue." Plaintiffs' Memorandum of Law in Opposition to State Defendants at 11–12. They argue that the independent basis in this case is "a request for prospective equitable relief," which they suggest is "the claims asserted properly against federal and county officials." *Id.* at 12. However, plaintiffs' submissions on these motions make clear that they are seeking only declarations that federal, state and local officials' past conduct violated federal law. This relief simply cannot be construed as prospective equitable relief.

■ In addition, plaintiffs argue that the state consented to be sued in federal court because state officials decided in May of 1997 to defer to HCFA before taking any action with regard to reasonable cost reimbursements of Medicaid managed care plans. They argue that, since HCFA decisions are subject to federal court review, the state's deference to HCFA constituted a waiver of Eleventh Amendment immunity. This argument has no merit. The state's refusal to take any action until it received further guidance from the HCFA does not rise to the level of an express waiver of its Eleventh Amendment immunity. *See Port Authority,* 495 U.S. at 305–06, 110 S.Ct. 1868.

For the foregoing reasons, state defendant Barbara DeBuono's motion to dismiss the complaint against her is granted on grounds that the state of New York enjoys Eleventh Amendment immunity.

## B. County Defendant Mahon's Motion to Dismiss

Defendant Kevin P. Mahon, sued in his official capacity as Commissioner, West-chester County Department of Social Services ("WCDSS"), moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on grounds that (1) plaintiff failed to state a claim under 42 U.S.C. § 1396A or the Administrative Procedures Act, (2) failed to state a claim under 42 U.S.C. § 1983 because they have not satisfied the standard set in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and (3) that in the alternative, plaintiffs' claims under § 1983 are time-barred.

■ WCDSS obtained a federal waiver from HCFA permitting the County to operate a mandatory, rather than a voluntary, Medicaid managed care program. HCFA approved the waiver. Pursuant to this waiver and in accordance with applicable law, WCDSS issued a request for proposal ("RFP") to managed care health plans regarding contracts to provide medical services under the Westchester County Managed Care Plan. The RFP included a provision which did not guarantee a reasonable cost-based reimbursement of services provided by FQHCs. On May 18, 1995, HCFA's regional administrator upheld the provision and ruled that West-chester County had not violated federal law. Westchester County's subsequent contracts with Medicaid managed care plans did not include a reasonable cost reimbursement election provision. Plaintiffs allege that the County's RFP provision and contracts violated federal law, specifically § 1396b and the Administrative Procedure Act ("APA").[3]

---

**3.** It should be noted that while a state defendant may enjoy Eleventh Amendment immunity, a County defendant in this context is not shielded by such immunity as an "arm of the state." *Holley v. Lavine,* 605 F.2d 638, 642 (2d Cir.1979); *see also, Lake Country Estates v. Tahoe Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Mt. Healthy City School District Board of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Calkins v. Blum,* 511 F.Supp. 1073, 1099 (N.D.N.Y.1981). The Su-

preme Court in *Edelman v. Jordan, supra,* stated that "a county does not occupy the same position as a State for purposes of the Eleventh Amendment." 415 U.S. at 667 n. 12, 94 S.Ct. 1347. Subsequently, in *Mt. Healthy City Board of Educ. v. Doyle,* supra, the Court characterized the relevant issue as whether the School Board defendant there was "to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or ... as a municipal corporation or other political subdivision to which the

### 1. Plaintiffs Fail to State A Claim Against the County Defendants Under the APA

■ Specifically, plaintiffs allege that "Defendants' actions have violated the Administrative Procedures Act." Complaint ¶ 67. Under the Administrative Procedure Act (APA), a federal court may set aside agency findings of fact found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. § 5 U.S.C. 706; *Supreme Oil Co. v. Metropolitan Transportation Authority*, 157 F.3d 148, 151 (2d Cir.1998); *Good Samaritan Hospital Regional Medical Center v. Shalala*, 85 F.3d 1057, 1060 (2d Cir.1996). The APA applies to the actions of federal agencies. *See* 5 U.S.C. § 551 (defining the meaning of "agency"). Thus, to the extent that plaintiffs' assert a claim against the county under the APA, that claim is dismissed.

### 2. Plaintiffs Stated a Claim Against the County under § 1396b.

■ Plaintiffs allege that the county defendant failed to provide FQHCs access to reasonable cost reimbursement in Westchester's Medicaid managed care contracts. They allege that providing such access was required by federal law and that failure to provide such access violated 42 U.S.C. § 1396b(m)(2)(A)(ix). County defendants motion to dismiss for failure to state a claim against the County under § 1396 is denied.

### 3. Section 1983

■ 42 U.S.C. § 1983 provides, Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities se-cured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

■ Violations of the Social Security Act, in this case a provision of the Medicaid law, constitute violations of § 1983. *See Maine v. Thiboutot*, 448 U.S. 1, 5–6, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Concourse Rehabilitation & Nursing Center, Inc. v. Wing*, 150 F.3d 185, 187 n. 1 (2d Cir.1998).

■ Local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to have violated federal law "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Here, plaintiff must allege that the unlawful act—the failure of the County to include reasonable cost reimbursements to Medicaid managed care plans in its contracts—occurred pursuant to some official policy or governmental custom. *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir.1985).

■ Plaintiffs thus must satisfy two requirements: (1) they must first prove the existence of a municipal policy or custom in order to show the municipality took some action that caused their injuries, and (2) the plaintiffs must establish a causal connection between the policy and the deprivation of their federal rights. *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985).

To satisfy the first prong of the test on a motion to dismiss, plaintiffs must allege the existence of: (1) a formal policy which is officially endorsed by the municipality,

Eleventh Amendment does not extend." The Court concluded that "(t)he bar of the Eleventh Amendment ... does not extend to counties and similar municipal corporations." *Holley*, 605 F.2d at 643. The county was primarily responsible for administration of the Medicaid Managed Care plans in that it contracted with the FQHCs. It thus cannot be viewed as an arm of the state.

*see Monell,* 436 U.S. at 690, 98 S.Ct. at 2035–36; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights, *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–484, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials, *see Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Plaintiffs have implicated a municipal policy by alleging that the County's RFP and subsequent contracts failed to guarantee reasonable cost reimbursement in Medicaid Managed Care plans. As the head of the Westchester County Department of Social Services, Commissioner Mahon unquestionably is a policymaker and the practice of not including reasonable cost reimbursement in its contracts rises to the level of a policy. *Pembaur,* 475 U.S. at 480–81, 106 S.Ct. 1292 (" 'official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time."); *Wimmer v. Suffolk County Police Department,* 176 F.3d 125, 137 (2d Cir.1999); *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 122–23 (2d Cir.1991); *Caminero v. Rand,* 882 F.Supp. 1319, 1326 (S.D.N.Y.1995). The County in its RFP could have guaranteed reasonable cost reimbursement, a policy which also would likely have been approved by the HCFA. *See City of Oklahoma City v. Tuttle,* 471 U.S. at 823, 105 S.Ct. 2427 ("the word 'policy' generally implies a course of action consciously chosen from among various alternatives"). In addition, the causation requirement is satisfied—the adoption of this policy and its inclusion in county contracts caused the deprivation of which plaintiffs complain.

The question posed on this motion is whether the County can be held responsible for the violation of federal law where its RFP was approved by the HCFA. *See Caminero,* 882 F.Supp. at 1324. Defendants state that they cannot be held responsible, while plaintiffs correctly allege that they can.

Our Court of Appeals has not addressed the issue of what effect, if any, the federal government's mandate or authorization of a municipal policy has on that municipality's liability for the policy under § 1983. The Court in *Caminero,* however, conducted an extensive examination of this issue to hold that in cases in which a plaintiff alleges that a municipality violated a constitutional right by adopting an unconstitutional policy that was in some way authorized or mandated by state law, the municipality can be held liable under § 1983. 882 F.Supp. at 1325. The Court in *Caminero* relied on a number of cases which indicated that "the official adoption or implementation of an unconstitutional municipal policy provides a sufficient basis for Section 1983 liability even when that policy is authorized or mandated by state law." 882 F.Supp. at 1324–25 (discussing *Garner v. Memphis Police Dep't,* 8 F.3d 358 (6th Cir.1993); *Evers v. County of Custer,* 745 F.2d 1196 (9th Cir.1984); *Davis v. City of Camden,* 657 F.Supp. 396 (D.N.J.1987)).

As the *Caminero* Court noted, our Circuit has addressed a related issue in an appeal contesting an attorneys' fee award against a county in a § 1983 case challenging an element of New York state's social services program. *See Koster v. Perales,* 903 F.2d 131 (2d Cir.1990). The Court of Appeals affirmed the district court's award and allocation of attorney's fees, reasoning that the county was responsible for administration of the challenged portion of the social services program and that plaintiff's complaint challenged the county's own pol-

icy as well as that of the state. *Koster,* 903 F.2d at 137 ("[W]here, as here, the County is responsible for the administration of the State's social services program … a fee award against the County is not inappropriate despite the State's supervisory role.") The plaintiff here similarly has challenged the County's action, as well as that of the federal and state governments. Likewise, where, as here, the County is responsible for administration of the Medicaid managed care program, a finding of liability on the part of the County is not inappropriate despite the Federal government's supervisory role.

Here, County defendant adopted a policy, authorized by the HCFA, which did not guarantee reasonable cost reimbursement in Medicaid managed care contracts and did not allow for its election. Plaintiffs allege that this deprived FQHCs of reasonable cost reimbursements to which they were entitled under federal law. They have sufficiently alleged a violation of § 1983.

### 4. Statute of Limitations

■ Finally, this Court rejects County defendant's assertion that plaintiffs' § 1983 claim is time-barred. The applicable statute of limitations for a claim under § 1983 is three years. Defendants argue that the last alleged violation by the County was on or about April of 1995, when the county issued its RFP. Plaintiffs, however, allege that the violation of federal law occurred on and after January 1, 1996, the date of the first contract signed by plaintiff HealthSource pursuant to the Westchester County RFP which did not guarantee reasonable cost reimbursement.

■ Under federal law, which governs the accrual of claims brought under §§ 1983 and 1985, *see, e.g., Morse v. University of Vermont,* 973 F.2d 122, 125 (2d Cir.1992), a claim generally accrues once the " 'plaintiff knows or has reason to know of the injury which is the basis of his action,' " *Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir.1994) (quoting *Singleton v.*

*New York,* 632 F.2d 185, 191 (2d Cir. 1980)).

Plaintiffs complain of the failure of the County, in its contracts with Medicaid Managed care plans, to provide for the election of reasonable cost reimbursement by the plans pursuant to 42 U.S.C. § 1396b(m)(2)(A)(ix). To argue, as the County defendant does, that the accrual of this alleged injury occurred before the contracts at issue were formed is untenable. The County's RFP failed to guarantee reasonable cost reimbursement, it did not advise that the plans would never be reimbursed. What gave rise to plaintiffs' lawsuit was the actual failure of the FQHCs to be reimbursed under the contracts it signed with the County.

For the foregoing reasons, the County's motion to dismiss plaintiffs' complaint is denied.

### C. Federal Defendants' Motion to Dismiss

Federal defendants Nancy–Ann Min DeParle, Administrator of the Health Care Financing Administration ("HCFA"), and Donna Shalala, Secretary of the United States Department of Health and Human Services ("HHS"), move to dismiss plaintiffs' complaint on grounds that (1) plaintiffs' claims are moot; (2) plaintiffs lack standing to bring suit, and (3) plaintiffs' action is barred by federal defendants' sovereign immunity.

Plaintiffs base their claim against the federal defendants on allegations that from 1995 to 1998 HCFA failed to take steps to order New York state's compliance with federal law. According to plaintiffs, "HCFA continued to study the New York situation but did not intervene." And finally, in April of 1998 DeParle issued a ruling in which she found that New York FQHCs were not entitled to receive reasonable cost reimbursement because she could find "no clear, written expression of intent by the FQHCs to seek and receive cost-based reimbursement." Plaintiffs' Opposition to Federal Defendants at 5.

Because this Court finds that plaintiffs' claims against DeParle and Shalala do not present a live case or controversy, the federal defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) is granted.

### 1. The Complaint Is Moot

■ The issue of mootness arises in this case because the provision of medicaid law that plaintiffs accuse the federal defendants of failing to enforce has since been amended, and plaintiffs present no claims that Federal officials are not acting in compliance with existing law.

■ The threshold question in every case before a federal court is whether the Court has the authority to adjudicate the lawsuit. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *New York State National Organization for Women v. Terry,* 886 F.2d 1339, 1346 (2d Cir.1989). "Federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *see also Muhammad v. City of New York Dept. of Corrections,* 126 F.3d 119, 122–23 (2d Cir.1997) ("Our inability to review a moot case 'derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.' ") (quoting *DeFunis,* 416 U.S. at 316, 94 S.Ct. 1704); *Fox v. Board of Trustees of the State University of New York,* 42 F.3d 135, 140 (2d Cir.1994) (case is moot when "the parties lack a legally cognizable interest in the outcome.") (internal quotations omitted).

■ "When a case becomes moot, 'federal courts lack[ ] subject matter jurisdiction.' " *Fox,* 42 F.3d at 140 (quoting *New York City Employees' Retirement Sys. v. Dole Food Co.,* 969 F.2d 1430, 1433 (2d Cir.1992)). Plaintiffs, who are seeking to invoke the subject matter jurisdiction of this Court, bear the burden of showing that they are properly before the Court. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Scelsa v. City University of New York,* 76 F.3d 37, 40 (2d Cir.1996).

Here, plaintiffs cannot meet their burden as their complaint presents no live case or controversy between them and the federal defendants. The complaint asks the Court to declare that in the past the federal defendants acted contrary to law in failing to enforce a reasonable cost reimbursement policy that Congress has since abolished. Plaintiffs do not and cannot seek damages on this claim from the federal government and they do not allege any redressable continuing effect from the federal defendants' allegedly unlawful conduct.

"[A] mere demand for declaratory relief does not by itself establish a case or controversy necessary to confer subject matter jurisdiction." *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exchange, Inc.,* 24 F.3d 427, 431 (2d Cir.1994). "The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). A declaratory judgment in a case such as this would be "without implications for practical enforcement upon the parties." *S. Jackson,* 24 F.3d at 431.

### 2. Plaintiffs Lack Standing Against Federal Defendants

■ The requirement of standing is derived from Article III's limitation on judicial power to actual cases or controversies. *See Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). "[T]he standing question in its Art. III aspect 'is whether the plaintiff has

alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Simon,* 426 U.S. at 38, 96 S.Ct. 1917 (quoting *Warth v. Seldin,* 422 U.S. 490, 498–499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); *see also Lee v. Bd. Of Governors of Federal Reserve Sys.,* 118 F.3d 905, 910 (2d Cir.1997) ("a litigant's stake in the controversy must extend beyond mere interest in a dispute, and ... standing ... ensure[s] the presence of that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends") (internal quotations omitted). The party invoking the authority of the court bears the burden of proof on the standing issue. *Id.*

To establish standing, plaintiffs must satisfy three conditions: First, plaintiffs must show they have suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Lee,* 118 F.3d at 910; *Matter of Appointment of Indep. Counsel,* 766 F.2d 70, 73 (2d Cir. 1985) ("a plaintiff must establish first that he has suffered some 'distinct and palpable injury'") (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)). Second, there must be a causal connection between the injury and the conduct complained of,

i.e., the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Lee,* 118 F.3d at 910; *Indep. Counsel,* 766 F.2d at 73. Finally, plaintiffs must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* Plaintiffs here cannot satisfy the third prong[4] of the standing requirement.

Plaintiffs' alleged injury—the inability to receive reasonable cost reimbursement during the period 1990 to October 1, 1997—cannot be redressed by a favorable decision against the federal defendants in this case. The most that plaintiffs could obtain from this Court against the federal defendants is a declaration that HCFA and HHS acted arbitrarily and capriciously in the past in failing to enforce federal Medicaid law. Besides emotional satisfaction, such a declaration would not provide any relief to the plaintiffs, financial or otherwise; plaintiffs thus lack standing. *See Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 45–46, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (dismissing action for lack of standing where complaint suggested "no substantial likelihood that victory in this suit would result in respondents' receiving the hospital treatment they desire."); *Indep. Counsel,* 766 F.2d at 74 (no standing where "relief requested ... would not redress the applicants' inju-

---

**4.** Defendants argue that plaintiffs also cannot satisfy the second prong of the standing test because "the links in the chain of causation between the challenged government conduct and plaintiffs' asserted injury are too attenuated." Federal Defendants Memorandum of Law in Support of Its Motion to Dismiss at 14. This Court disagrees. The HCFA played and continues to play an important regulatory role in state Medicaid programs. Indeed, state plans are subject to HCFA approval. If the Secretary of HHS becomes aware that a state is not in compliance with federal Medicaid law, it can withhold federal funds from the state. 42 U.S.C. § 1396c; *see also Still's Pharmacy, Inc. v. Cuomo,* 981 F.2d 632, 637 (2d Cir.1992) (HCFA warned state that if it did not comply with law governing Medicaid prescription drug program that it "risked the

loss of its federal Medicaid funds."). While HHS cannot compel compliance, *see Arthur C. Logan Memorial Hosp. v. Toia,* 441 F.Supp. 26, 27 (S.D.N.Y.1977) it could have taken steps to encourage compliance. *Id.* ("If ... the Secretary determines that a State is out of compliance [with Medicaid statute], [s]he may ... withhold part or all payment under Medicaid," or she can "negotiate with a state.") Thus, if there was indeed a violation of Federal Medicaid law by New York state and the County of Westchester—a question which this Court does not answer—the Federal government, in failing to take steps to ensure compliance, did play a role in the alleged injury suffered by plaintiffs because HCFA issued a finding that the plans did not violate federal law.

ries"). Because plaintiffs cannot show that their alleged injury would be redressed by a favorable decision from this Court, they lack standing to sue the federal defendants.

## CONCLUSION

For the foregoing reasons, federal defendants Nancy–Ann Min DeParle and Donna Shalala's motion to dismiss is granted, state defendant Barbara DeBuono's motion to dismiss is granted, Westchester County defendant Kevin P. Mahon's motion to dismiss is denied. The parties are directed to appear at a conference pursuant to Rule 16, Fed.R.Civ.P. on October 7, 1999 at 9:00 a.m.

**SO ORDERED**